**Sam ISOM**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education & Welfare.**

**Civ. A. No. 858.**

United States District Court
W. D. Virginia,
Abingdon Division.

April 18, 1962.

Glen M. Williams, Jonesville, Va., for plaintiff.

Thomas B. Mason, U. S. Atty., for W. D. Virginia, Roanoke, Va., for defendant.

MICHIE, District Judge.

The plaintiff herein filed an application with the Department of Health, Education & Welfare on September 22, 1959 for the establishment of a period of disability and for disability benefits under § 205(g) of the Social Security Act, as amended (42 U.S.C.A. § 405(g)). The application was denied and after the usual administrative procedure below the denial became final.

The Secretary's position on this appeal is that the plaintiff is not disabled as that term is defined in the Act and that if he became so disabled it was subsequent to the date of his application so that his application should be dismissed and he should be required to file a new one.

It would appear from § 223(a) (1) (D) (42 U.S.C.A. § 423(a) (1) (D)) that the applicant must be under a disability at the time the application is filed. But this is apparently modified by § 223(b) (1) as amended (42 U.S.C.A. § 423(b) (1)) so that if the applicant becomes disabled within nine months after filing the appli-

cation, the application is deemed to have been filed within the first month within which disability occurs.

█ However I believe there is substantial evidence to the effect that the plaintiff was disabled within the meaning of the Act on the date the application was filed, September 22, 1959, and so this point becomes immaterial.

In a report of Dr. Daniel Gabriel dated March 1, 1960 the answer to the item "Date Applicant Became Unable to Work" is "March 1959". It appears that Dr. Gabriel had been the plaintiff's personal physician for a number of years. Furthermore in a letter from Dr. Gabriel dated November 28, 1960 addressed "To whom it may concern" Dr. Gabriel states:

"I have been Sam Isom's personal physician for the past ten years and have intimate knowledge of his physical health. This man last worked in March, 1959, and at my recommendation, he gave up working in the coal mines because of his exertional dyspnea followed by undue fatigue. Up to the time that I found it mandatory to take this man out of the mines, he had been under my care for the treatment of pneumoconiosis and emphysema. these latter conditions caused frequent exacerbations and difficult breathing (asthma). He had been on numerous bronchodilators and expectorants without benefit and therefore, it was imperative to preserve this man's energy by declaring him unable to work and thus on this status, he presently maintains sufficient energy to barely carry on minimal household activities, excluding working around the farm.

"Later, a diagnosis of diabetes and hypertensive cardio vascular disease was made and substantiated by numerous electrocardiogram and fasting blood sugars. A recent Blood sugar still shows, despite his careful diet and the taking of Orinase tablet, a Blood sugar of 200 mg. pr 100 cc. This man, in addition to his pneumoconiosis, emphysema, diabetes, hypertensive cardio vascular disease and traumatic arthritis, he has an atrophied right forearm and hand, secondary to the injury he sustained in the right elbow approximately 18 years ago. As a result of this condition, the hand and forearm is weak and his grasp is minimal.

"Mr. Isom has orders from me to refrain from any exertional activities and when walking to move about slowly and to take rest periods by sitting down in between walking from one point to another when exceeding more than .01 of a mile.

"This man, in my opinion, is permanently and totally disabled from any gainful occupation of any kind."

It is true that some of the conditions referred to may have come about later than September 1959. Nevertheless it is obvious that Dr. Gabriel considered him disabled from working in the coal mines as early as March 1959.

Dr. Gabriel's opinion would, of course, not be conclusive if there were in the record any substantial evidence to the contrary, since the Act provides that upon appeal to the court the Secretary's final decision must be affirmed if there is any substantial evidence to support it. But I can find no substantial evidence to support the Secretary's finding that Dr. Gabriel's opinion was mistaken.

The Secretary relied in argument on this matter principally upon four medical reports: a report under date of March 18, 1959 of Dr. Robert Cofer, a radiologist at the Miners Memorial Hospital Association, two reports of Dr. Paul O. Wells, also a radiologist at the Miners Memorial Hospital Association dated March 11, 1959 and September 17, 1959 and a report of Dr. William F. Schmidt, apparently a private practitioner, of Bristol, Tenn.-Va. dated May 5, 1960.

The Cofer report of March 18, 1959 shows, inter alia, " * * * generalized cardiac enlargement. The bronchovascular markings are markedly accentuated

through both lung fields and there are numerous fine nodular areas of increased density that are believed to be compatible with an early simple pneumoconiosis. * * * Impression: Mild pulmonary fibrosis compatible with an early simple pneumoconiosis."

The Wells report of March 11, 1959 states that both lung fields show markedly accentuated pulmonary markings, the heart is slightly enlarged, minimal calcification is noted in the arch of the aorta and, under "Impression", "Cardiomegaly, mild, cause undetermined."

The Wells report of September 17, 1959 concludes with an impression of "Pulmonary fibrosis and emphysema consistent with simple pneumoconiosis which has not changed in appearance over a period of six months."

The Schmidt report of May 5, 1960 which appears to have been the most thorough examination states towards the end as follows:

"IMPRESSION:

"1. Diabetes Mellitus in good control. On Orinase.

"2. Arterial Hypertension—Under therapy.

"3. Pulmonary Fibrosis and Emphysema—minimal.

"4. Bronchospasm secondary to the above.

"5. Questionable area of Pneumonitis—right lower lobe. Etiology undetermined. Suspect bacterial.

"6. Chronic Bronchitis.

"7. Induration of the Seminile Vesicles. Etiology to be determined. Suspect bacterial infection.

"8. Traumatic Arthritis of the right elbow with limitation of motion and atrophy of the interossei."

None of the four reports relied upon by the Secretary contain any evaluation of the effect of the findings on claimant's ability to work.

It is entirely possible that a doctor could read these reports and conclude that the claimant was not disabled but I do not have sufficient training in the science of medicine to do so.

■ As I said in Sparks v. Ribicoff, D.C., 197 F.Supp. 174:

"The Court cannot take judicial notice of medical matters that are not common knowledge",

quoting at some length to that effect from 31 C.J.S. Evidence § 79, pp. 662–666.

As I said in that case I recognize the rule that medical witnesses should not be permitted to state their conclusions on the ultimate issue to be decided, i. e., whether or not the plaintiff is disabled within the technical meaning of the term as defined in the Social Security Act. Nevertheless somebody has got to state for the benefit of the court what the claimant can still do and what he cannot do. The record in this case is completely silent as to what the claimant could do in September 1959 except for the statements above quoted of Dr. Gabriel to the effect that he was unable to work.

The government in argument practically conceded that the plaintiff could no longer work in the coal mines but it contended that he could perform less arduous work. As indicated above there is no evidence in any medical report as to what he could do. And if we should guess at what he might still be able to do, which would certainly appear to be very limited from his own and his physician's testimony, there is still no evidence as to the availability of any such work. The plaintiff is a man now almost 56 years old (born May 1, 1906). He has little or no education. The Examiner states in his report that the plaintiff "completed the 7th grade of elementary school" and this is also stated in a "Report of Contact" dated September 22, 1959 and found in the record. But the claimant himself at the hearing, when asked if he had finished the 7th grade, denied it and when asked what grade he did finish said, "I went to the first reader and I never could read it."

■ And while I am not familiar with Pennington Gap, I know that it is in the coal fields and I think I can take judicial

notice of the fact that sedentary jobs for disabled men are not easy to get in that area, especially in the current depressed condition of the coal industry.

This whole case is very similar to that of Kerner v. Flemming, 283 F.2d 916, at p. 921, in which the court said:

"The Government relies heavily, as it did successfully in the District Court, on the provision in § 205(g) that 'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * * '. Accepting this as we do, we think there was here no substantial evidence that would enable the Secretary to make any reasoned determination whether applicant was 'unable to engage in substantial and gainful activity (commensurate with his age, educational attainments, training experience, mental and physical capacities). * * * '. Teeter v. Flemming, 7 Cir., 1959, 270 F.2d 871, 874; see Flemming v. Booker, 5 Cir., 1960, 283 F.2d 321. Such a determination requires resolution of two issues— what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available, Aaron v. Fleming, D.C.M.D.Ala. 1958, 168 F.Supp. 291, 295.

"Here there was insufficient evidence on either issue. In contrast to the forms in use by many government agencies and private firms, designed to disclose the individual's ability in particular activities such as standing, stooping, lifting, walking, and numerous others, and the statement in the Department's own booklet 'Disability and Social Security,' that, in cases like the applicant's, evaluation teams should explore 'the history, effect of exposure to cold, effect of activity, type and the severity of the pain,' Disability Insurance Fact Book, infra note 10, p. 28, here

there was basically only a catalog of the names of Kerner's various complaints and contradictory conclusions of the vaguest sort, with no real attempt to demonstrate the extent of impairment of function or the residual capacities he yet possesses. Unsatisfactory. as all this was, the evidence as to employment opportunities was even less. Here is a man, admittedly able to do only light work, and this at a location reachable without undue exertion, and presenting a prospective employer with the unattractive combination of age, heart disease, diabetes and acute worry about himself. . No one of these factors might be fatal to employment—indeed, the constellation of them may not be—but the Secretary had nothing save speculation to warrant a finding that an applicant thus handicapped could in fact obtain substantial gainful employment."

And with respect to the age and lack of education of the plaintiff as eliminating the possibility of his obtaining any kind of work, and particularly the burden upon the government of proving that there is some kind of work that the plaintiff can do, the case is reminiscent of Parfenuk v. Flemming, D.C., 182 F.Supp. 532, at p. 535, in which Judge Wyzanski said:

"When, as in the case at bar, a claimant proves that he has reached · the age of 64, that he has had only 5 years of schooling, that his comprehension of English is limited, that the only American jobs he has ever held are as wood chopper, shoveler, and upholsterer, and that he has a physical impairment of his right hand which incapacitates him to perform any of those tasks, then he has proved that he is disabled.

"The defendant suggests that the claimant physically is capable of being a guard or some kind of salesman. No evidence supports this suggestion. Cf. Klimaszewski v. Flemming, D.C.E.D.Pa., 176 F.Supp.

927, 932. Moreover, even if it were true that the claimant could meet the physical and language requirements of such an occupation, there is no evidence that without relevant prior experience a man of claimant's age, over 64 years, could procure such a job.

"As I said last May in Scales v. Flemming, [D.C., 183 F.Supp. 710], under the Social Security Act, unlike the situation under some other statutes, it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his impairment and of his age, experience, and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and of his lack of particular experience and particular education for any other type of job. *If there are other kinds of work which are available and for which the claimant is suited, it is the Secretary's burden to go forward to offer evidence of those types of work.*" (Emphasis supplied.)

Here, as in Parfenuk, the government has not attempted to show that there is any other work available which Mr. Isom might perform.

I suppose that I could remand the case for the taking of further evidence on this point but I am of the opinion not to do so for the reason also stated by Judge Wysanski in the Parfenuk case, 182 F.Supp. at p. 536:

"* * * In a case not unlike this, Aaron v. Fleming, 168 F.Supp. at page 296 Circuit Judge Reeves, 'ordered and adjudged that the decision of the defendant be and it is reversed and that the cause be remanded with directions to find the plaintiff disabled * * * and to enter a decision accordingly.' This seems to me a salutary precedent because it so well indicates a judicial determination that the defendant was plainly in error, and that it is important that a disabled, elderly man shall not suffer further delay in receiving the benefits which are provided for him by an Act of Congress."

An order will be entered accordingly.