**Charles V. QUINN**

v.

**Elliot RICHARDSON, Secretary of Health, Education and Welfare.**

Civ. A. No. 72–477

United States District Court,
E. D. Pennsylvania.

Jan. 9, 1973.

Edward Karet, Philadelphia, Pa., for plaintiff.

Gary Tilles, Asst. U. S. Atty., Philadephia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

The plaintiff filed this suit under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education, and Welfare denying disability benefits. Both parties have moved for summary judgment. The only issue before the court is the presence of substantial evidence [1] in the record to support the Secretary's decision. If such documentation is present, the findings control even though the court might have reached, justifiably, a different conclusion had the case come to it de novo. 42 U.S.C. § 405(g); Palmer v. Celebrezze, 334 F.2d 306, 308 (3rd Cir. 1964).

The plaintiff has the burden [2] of establishing his disability within the meaning of the Social Security Act, 42 U.S.C. §§ 416(i)(1) [3] and 423(d) prior

---

1. Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842. (1971); Consolidated Edison Company v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed.2d 126 (1938). " '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn from it is one of fact for the jury.' " Consolo v. Federal Maritime Commission, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); N. L. R. B. v. Columbian Enameling and Stamping Company, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed.2d 660 (1939); and Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

2. Cyrus v. Celebrezze, 341 F.2d 192, 195 (4th Cir. 1965).

3. 42 U.S.C. § 416(i)(1) defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d) (1) reiterates the same definition.

to January 31, 1972,[4] the date the Secretary's decision became final. 42 U.S.C. §§ 423(b) and 416(i)(2)(G). To do this, a claimant must show an impairment that actually renders him unable to engage in any substantial gainful employment. Hedge v. Richardson, 458 F. 2d 1065 (10th Cir. 1972); Laws v. Celebrezze, supra; and Stancavage v. Celebrezze, 323 F.2d 373, 376–377 (3rd Cir. 1963). To make a valid decision on the impairment and ability to work questions, four elements must be considered: first, objective medical data and findings, second, expert medical opinions, third, subjective complaints of pain, Bittel v. Richardson, 441 F.2d 1193, 1195 (3rd Cir. 1971), and fourth, plaintiff's age, educational background and work history. Dillon v. Celebrezze, 345 F.2d 753, 755 (4th Cir. 1965) and Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

Charles J. Quinn, the plaintiff, was born April or May 27, 1918.[5] He claims that bronchitis and emphysema have disabled him since November 1, 1969.[6] As a result of these ailments, he coughs continually and becomes short of breath after minor exertion. His private physician, Dr. John Katakis, apparently reported[7] that Mr. Quinn was treated for pneumonia on December 23, 1966, consulted a doctor only for acute problems, and was last seen November 19, 1969. At that time the claimant, who is 5'10" tall, weighed 230 lbs.[8] X rays taken in 1966 showed abnormalities in Quinn's lungs.

On February 21, 1970, the plaintiff was hospitalized at the Mercy Catholic Medical Center complaining of shortness of breath. X rays revealed his heart was within normal size limits and that he had lung changes consistent with chronic vesicular bronchitis. Also shown were old healed fractures of the right sixth, seventh and eighth ribs with an old reaction in the pleural tissue around the lungs. There was no other evidence of functional or pleural disease and subsequent X rays revealed no changes. An EKG was essentially normal.

The final diagnosis was gallstones, chronic bronchitis and pulmonary emphysema. The plaintiff's gall bladder was successfully removed on March 10, 1970, and he was released from the hospital eight days later.

Dr. Donald L. Kettering, medical director of the pulmonary disease section of the hospital, first saw Mr. Quinn on February 26, 1970, and reported on May 1, 1970, that the plaintiff had labored breathing on exertion, edema of the foot, a chronic cough, and had had several episodes of pneumonia. Pulmonary function studies done on February 26, 1970, March 9, 1970, and October 27, 1970, revealed that breathing ability was impaired and restricted. The results of a reevaluation test performed July 13, 1971, were similar but contained the additional observation that. the breathing restriction might be caused by obesity. Dr. Kettering stated that Mr. Quinn was capable of only sedentary activity.

The reports of other physicians tend to support these findings. On June 5, 1970, Dr. Edward Torrance reported the results of another EKG to be normal. On June 8, 1970, Dr. Thomas Jacob reported to Dr. Torrance that X rays suggested a chronic inflammatory disease and made the exclusion of a bronchial lesion difficult. On October 28, 1970, Dr. Donald Powers examined Mr. Quinn. Based on physical and arterial gas studies, Dr. Powers reported an impression of chronic bronchitis, chronic pulmonary disease, and mild hypoxemia (deficient

---

4. Plaintiff meets the special insured status requirements of the Act through March 31, 1973.

5. He has used both dates.

6. He has light perception only in one eye but does not base his claim on this fact.

7. The report is unsigned.

8. At the time of the hearing he weighed 215 lbs.

oxygenation of the blood) without hypercapmia (excessive carbon dioxide in the blood). The report also stated that there was no peripheral edema, no attacks of asthma, no chest pain, and no obvious distress.

Mr. Robert Cherniak, a vocational expert, reviewed all the documentary evidence and attended the hearing. Asked to assume the plaintiff could do sedentary work, he testified that Mr. Quinn could perform jobs of hand packaging, hand assembling, and order clerk, if the environment was controlled. Air conditioning was one example of such control. Jobs in these categories existed in the local and national economy at all times pertinent here. Mr. Cherniak's opinion took into account the plaintiff's tenth grade education and most recent prior work experience as a self-employed bartender and insurance salesman.

Having evaluated all of the evidence, the hearing examiner concluded that plaintiff could perform work of a sedentary nature on a sustained basis providing the place of employment was air conditioned. A finding of disability was therefore refused.

■ The claimant contends that a Social Security Administration regulation, 20 CFR 404.1502(a), requires the award of benefits because his pulmonary function studies show evidence of spirometric airway obstruction within the limits of the table in 20 CFR Subpart P, appendix, section 3.02.[9] This argument is misleading. First, the full text of 20

CFR 404.1502(a) provides that decisions as to whether or not an impairment constitutes a disability shall be based upon all the facts in the case. Medical evidence alone "*can*" support a finding of disability but does not require this conclusion. Second, plaintiff's test results show an impairment but not necessarily a disability. The figures from the July 13, 1971, study are the worst but were still classified as moderate by the examining physican. He concluded that "the claimant suffers from chronic obstructive lung disease of an emphysema type and that the same is moderate in degree." However, he also decided that plaintiff's condition was not so disabling that he could not work. Plaintiff's only evidence on this ultimate conclusion was his complaint of shortness of breath. This was insufficient to carry the burden of proof which the law imposes upon him.

The claimant did establish that he was unable to return to any of his prior occupations, that is, life insurance salesman, tavern owner, bartender, or mechanic's helper. However, the Secretary showed the availability of work which claimant could perform. The hearing examiner accepted the testimony of Mr. Cherniak, the vocational expert, that sedentary jobs within controlled atmospheric conditions exist in the community where claimant resides and in the national economy.

Plaintiff contends that he has established his inability to obtain employment by reason of his physical

---

9. This table lists standards for comparison of maximum voluntary ventilation (MVV) or maximum breathing capacity (MBC) and one second forced expiratory volume ($FEV_1$) for plaintiff's height (70 inches). An impairment is shown when both MVV (MBC) and $FEV_1$ are less than or equal to the values given. The test results in parentheses are the after bronchodilation figures.

| Test dated | MVV (MBC) equal to or less than in L./min. 45 | $FEV_1$ equal to or less than L. 1.4 |
|---|---|---|
| 2/26/70 | 47 (61) | 1.082 (1.2) |
| 3/9/70 | 68 (75) | 1.175 (1.3) |
| 10/27/70 | 39 (39) | 1.350 (1.755) |
| 7/13/71 | 37 (no figure given) | 1.013 (no figure given) |

condition[10] because four or five firms have refused to hire him. He argues that a reasonable job opportunity must be available to him citing Thompson v. Celebrezze, 238 F.Supp. 873 (N.D.Tex. 1965); Isom v. Ribicoff, 204 F.Supp. 572, 575 (W.D.Va.1962); and Parfenuk v. Flemming, 182 F.Supp. 532, 536 (D. Mass.1960). See also Bujnovski v. Celebrezze, 343 F.2d 868, 870 (3rd Cir. 1965) and Janek v. Celebrezze, 336 F.2d 828, 833–834 (3rd Cir. 1964).

The 1968 amendment to the Social Security Act changed the law in this regard. As set forth in 42 U.S.C. 423(d)(2)(A), the test for a disability is not whether an individual will be hired or whether a job vacancy exists. The issue is not what employer preferences may be. Rather, an individual is disabled only if his impairments are of such severity that he cannot, considering his age, education, and work experience, engage in any substantial work existing in the national economy.

So far as Mr. Quinn is concerned, the hearing examiner had before him the medical reports as well as the testimony of the vocational expert. On this record, he concluded that the claimant suffered from a moderate degree of chronic obstructive pulmonary disease but that jobs which he could perform were available. While I might not have reached this same decision, I cannot say it was incorrect: Palmer v. Celebrezze, 334 F.2d 306, 308 (3rd Cir. 1964); 42 U.S.C. § 405(g).

Although the act may impose a "very harsh" burden upon the plaintiff, the courts are bound by the language Congress used. Woods v. Finch, 428 F.2d 469, 470 (3rd Cir. 1970); Cooper v. Finch, 433 F.2d 315 (5th Cir. 1970); and Gentile v. Finch, 423 F.2d 244, 248 (3rd Cir. 1970). Accordingly, the Sec-

retary's denial of disability benefits was supported by substantial evidence and must stand. Ellis v. Finch, 333 F.Supp. 146, 147 (E.D.Pa.1971).

---

10. He states that he cannot tolerate cigarette smoke and there is no job in which he would not be exposed to fellow employees smoking on the job. However, he presents no evidence of any ill effect from being near a smoker. In addition, this argument assumes that smoking is allowed on all jobs which is obviously not true.