George W. CELANI

v.

Caspar W. WEINBERGER, Secretary, Department of Health, Education and Welfare.

Civ. A. No. M–74–733.

United States District Court, D. Maryland.

March 10, 1975.

Harold Buchman and David N. Kuryk, Baltimore, Md., for plaintiff.

George Beall, U. S. Atty., and John W. Sheldon, Asst. U. S. Atty., Baltimore, Md., for defendant.

## OPINION AND ORDER

JAMES R. MILLER, Jr., District Judge.

This action is brought pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for disability insurance benefits.

Plaintiff filed an application for a period of disability and for disability insurance benefits on March 28, 1973 (Tr. 42–45), alleging that he became unable to work on February 22, 1973, at age 55.

The application was denied initially (Tr. 46–47), and plaintiff filed a request for reconsideration (Tr. 48). Upon reconsideration by the Bureau of Disability Insurance of the Social Security Administration, and after the Maryland State Agency found that plaintiff was not disabled (Tr. 70–73), plaintiff's request was again denied (Tr. 49–50).

On January 16, 1974, plaintiff, his wife, his attorney, and a vocational expert appeared at a hearing held before an administrative law judge. The administrative law judge considered the case *de novo,* and on March 11, 1974, found that plaintiff was not under a disability (Tr. 7–11). The administrative law judge's decision was approved by the Appeals Council on May 31, 1974 (Tr. 3), and thus became the final decision of the Secretary.

The issue now before this court on judicial review is whether there is substantial evidence to support the Secretary's decision that plaintiff was able to engage in substantial gainful activity, thereby preventing him from qualifying for disability insurance benefits.

Plaintiff alleges that, since February, 1973, he has been unable to engage in any employment due to a heart condition (Tr. 42). The record reveals that plaintiff was hospitalized for three and a half weeks in 1965 after experiencing an episode of chest discomfort (Tr. 74–75). A series of electrocardiograms were taken at that time and denoted myocardial ischemia (temporary lack of adequate blood flow to an area of the heart). (Tr. 77–82). The diagnosis was hypertension and probable myocardial infarction (Tr. 75).

In February, 1972, plaintiff was again hospitalized for two weeks for heart-related problems. His blood pressure was elevated and his heart beat was abnormal (Tr. 83–84). The diagnosis was cardiac arrhythmia, auricular flutter and arteriosclerotic cardiovascular disease (Tr. 83).

On February 23, 1973, plaintiff complained of palpitations and was hospitalized for the third time (Tr. 87–88). On February 27, 1973, cardioversion was done using electric shock (Tr. 122–3, 130). An x ray of plaintiff's heart indicated that it was perhaps slightly enlarged (Tr. 93). Eleven electrocardiograms were recorded between February 23, 1973 and March 3, 1973 (Tr. 94–104). Although the electrocardiograms revealed myocardial ischemia, plaintiff's condition seemed to improve. He was discharged March 14, 1973, with final diagnoses of atrial flutter, coronary artery disease, and arteriosclerotic cardiovascular disease (Tr. 88–89).

In addition to plaintiff's cardiac problem, plaintiff also suffers from diabetes mellitus, hyperuricemia (elevated uric acid in the blood), and arthritis in his right hand (Tr. 26–28, 123, 126–127, 145).

Since 1969 [1] (Tr. 145), plaintiff has been under the care of Dr. Rolando Goco, a general practitioner (Tr. 134). The doctor has prescribed various medications for plaintiff, and plaintiff stated at the hearing that he takes "seven different pills a day." (Tr. 26). These pills include digoxin, DBI, and phenobarbitol (Tr. 26–27). (See also, Tr. 123, 124, and 125). As a result of the medication, plaintiff constantly perspires and suffers with diarrhea (Tr. 28).

Plaintiff testified at the hearing that he has been unable to work because of dizziness, lightheadedness, and fast palpitations (Tr. 27). (See also Tr. 56). Even going up the stairs makes plaintiff dizzy (Tr. 30). While he does attempt to do light chores around the house (Tr. 29), plaintiff stated that the activity makes him weak (Tr. 29–31). Plaintiff further complained that his memory is failing (Tr. 31). Although plaintiff experiences tightness in his chest, he did state at the hearing that he has no chest pain (Tr. 31). (See also Tr. 56).

1. On Tr. 120, Dr. Goco states that he first examined patient on February 9, 1972. On Tr. 145, he says that patient has been under his care since 1969.

Plaintiff's wife testified that her husband becomes weak and starts perspiring when he tries to do household chores (Tr. 34). Mrs. Celani also stated that, as a result of her husband's physical condition and as of the time of the hearing, they had not engaged in sexual relations for one year (Tr. 34).

Three medical reports offer opinions as to plaintiff's ability to work. Dr. Goco, plaintiff's private physician, reported on June 15, 1973, that he had been treating plaintiff on a monthly basis since February, 1972, for atrial flutter, coronary artery disease, arteriosclerotic hypertensive cardiovascular disease, diabetes mellitus, and hyperuricemia (Tr. 120, 123).

In a second report submitted on August 31, 1973, Dr. Goco stated that plaintiff had recurrent attacks of dizziness and chest discomfort on exertion (Tr. 128–129). In his last report, dated September 5, 1973, Dr. Goco determined that plaintiff was permanently disabled (Tr. 145).

On July 12, 1973, plaintiff was examined by Dr. Bernard Ostrow, a cardiovascular specialist (Tr. 124–127, 132). The examination was conducted at the request of the Maryland State Agency (Tr. 124–127). Plaintiff's complaints included fatigue, dizzy spells, lightheadedness, palpitations, and mild dyspnea (shortness of breath). On physical examination, plaintiff's blood pressure was found to be slightly elevated, and an electrocardiogram was felt representative of probable left ventricular hypertrophy (Tr. 126). Dr. Ostrow's final diagnosis included hypertension, hypertensive arteriosclerotic heart disease with a history of arrhythmias, diabetes mellitus (controlled by diet and oral hypoglycemics) and degenerative joint disease of the hands (Tr. 126–127).

In spite of plaintiff's illness, Dr. Ostrow did not believe that plaintiff was precluded from engaging in any gainful employment. He stated:

"The recent onset of cardiac arrhythmias suggest concomitant coronary artery disease, but at the present time he seems to be well-compensated and is not in congestive heart failure. I feel this patient should be able to perform sedentary and light work activity despite these problems." (Tr. 126).

Plaintiff was examined at the Veterans Administration Hospital on August 8, 1973 (Tr. 147–151). He was diagnosed as having hypertensive cardiovascular disease, diabetes mellitus, and a history of cardiac arrhythmia (Tr. 151). Consequently, he was awarded Veterans Administration Benefits (Tr. 145A).

Dr. George Sharfatz, an internist (Tr. 133) and medical consultant with the Bureau of Disability Insurance, reviewed the evidence submitted and analyzed plaintiff's condition on October 18, 1973 (Tr. 130–131). He did not personally examine plaintiff. Nevertheless, Dr. Sharfatz concluded that plaintiff had hypertension, arteriosclerotic heart disease, mild diabetes, and elevated uric acid. According to Dr. Sharfatz, however, there was no cardiac enlargement or signs of congestive heart failure. Thus Dr. Sharfatz stated:

"[W]hereas he [plaintiff] may be incapacitated for short periods of time when he has his atrial flutter, in general he should retain functional capacity for light work activity." (Tr. 131).

Insofar as plaintiff's employment history is concerned, the record reveals that plaintiff was employed from 1954 to 1973 in a plant which produces school supplies. During the first five years of this employment, plaintiff adjusted machinery. During the remaining time, plaintiff supervised 42 employees on a production line (Tr. 24–25, 55). As a supervisor, plaintiff was required to see that the workers had parts at all times, that schedules were met, and that daily production cards were completed (Tr. 24, 55). Plaintiff also had to move employees from one location to another, train employees, and walk from place to place to observe employees at work (Tr.

25). Prior to his job in the school supply plant, plaintiff worked elsewhere as a machinery mechanic (Tr. 23).

Daniel D. Mauchline, a vocational consultant with 19 years' experience in the field of vocational rehabilitation (Tr. 137–144), testified at plaintiff's hearing (Tr. 35–40). In spite of Dr. Ostrow's opinion that plaintiff could perform light work, Mr. Mauchline believed that plaintiff could not return to his job as supervisor. While such a job does not require much in the way of lifting or carrying, it was Mr. Mauchline's opinion that the environment in which such jobs are performed is very highly pressured (Tr. 37). Plaintiff's doctor (Dr. Goco) also believed that plaintiff's job as foreman was too pressured for him (Tr. 55) under the circumstances.

Assuming that plaintiff could perform lighter, sedentary jobs, Mauchline stated that plaintiff would be a suitable candidate for Vocational Rehabilitation (Tr. 38). Skills which plaintiff had acquired over the years could, according to Mauchline, be utilized in sedentary work activity (Tr. 37). As examples, and on the assumption plaintiff could perform light work, Mauchline indicated that plaintiff had the vocational ability to be employed as a credit interviewer, insurance claims taker, electric buffing wheel operator, molding machine tender and ambassador machine operator (Tr. 37–38). Mauchline recognized, however, that plaintiff's prospect of employment would be limited if he were to reveal his medical symptoms upon applying for jobs (Tr. 39).

### Discussion

It is clear that the function of this court on review is to determine whether, based upon the entire record, the agency's decision in denying plaintiff disability insurance benefits is supported by substantial evidence. Huckabee v. Richardson, 468 F.2d 1380 (4th Cir. 1972); Gonzalez v. Richardson, 455 F.2d 953 (1st Cir. 1972); Wells v. Finch, 418 F.2d 1247 (4th Cir. 1969). Substantial evidence is more than a scintilla but less than a preponderance and must be based on the record as a whole. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Laws v. Celebrezze, 368 F. 2d 640 (4th Cir. 1966).

To qualify for disability insurance benefits and a period of disability under sections 216(i) and 223 of the Social Security Act, 42 U.S.C.A. §§ 416(i) and 423, an individual must be under age 65, meet the insured status requirements of these sections, file an application for disability insurance benefits, and be under a "disability" as defined by the statute. 42 U.S.C. § 423(d)(1)(A) defines "disability" to mean:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

It is apparent, then, that "disability" as defined by the statute is more than just a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for at least 12 months. The statute also requires a factual determination that the impairment renders the insured unable to engage in *any* substantial gainful employment. Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972); Laws v. Celebrezze, *supra*, 368 F.2d at 643; Bujnovsky v. Celebrezze, 343 F.2d 868 (3rd Cir. 1965).

In social security cases, the plaintiff has the burden of proving that

---

**2.** 42 U.S.C. § 423(d)(3) defines "physical or mental impairment":

"For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

he is disabled under the provisions of the statute. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Blalock v. Richardson, *supra*. Five elements of proof are considered in deciding whether a claimant is, in fact, disabled under the terms of the Act. These elements are: 1) objective medical data and findings; 2) expert medical opinions and diagnoses; 3) claimant's subjective complaints; 4) plaintiff's age, educational background, and work history; and 5) employment in the economy which claimant has the capacity to perform. *See* Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Hayes v. Gardner, 376 F.2d 517 (4th Cir. 1967); 42 U.S.C. § 423(d)(2).

The medical evidence provided by plaintiff to establish his disability consisted of the report of his family physician, Dr. Goco, the Veterans Administration finding of disability, and his own subjective complaints. Dr. Goco, a general practitioner, found plaintiff permanently disabled.

The reports of Dr. Ostrow, a cardiologist who examined plaintiff, and Dr. Sharfatz, who did not examine plaintiff but who did review his records, confirmed Dr. Goco's medical diagnoses. Nevertheless, these doctors concluded that plaintiff's illness would not preclude plaintiff from engaging in light, sedentary work.

■■ Resolution of conflicts in the evidence, including conflicting medical opinions, is a function solely within the province of the Secretary as the trier of the facts. Richardson v. Perales, *supra*, 402 U.S. 389, 91 S.Ct 1420, 28 L.Ed.2d 842; Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971); Moss v. Gardner, 411 F.2d 1195 (4th Cir. 1969). It is not the court's function to reweigh the evidence or to substitute its judgment for that of the Secretary. Hayes v. Gardner, *supra*, 376 F.2d 517 (4th Cir. 1967).

■ Moreover, criteria for disability entitlement differ among disability programs. Although the Veterans Administration has found plaintiff eligible for disability benefits, the Secretary is entitled to make his own independent finding of disability under the Social Security Act. Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968). A finding of disability by the Veterans Administration should be considered, Hicks v. Gardner, *supra*, but is not binding on the Secretary of Health, Education and Welfare. Skeels v. Richardson, 453 F.2d 882 (5th Cir. 1972), cert. denied, 409 U.S. 857, 93 S. Ct. 137, 34 L.Ed.2d 101 (1972); Entrekin v. Weinberger, 477 F.2d 561 (5th Cir. 1973).

■ Three medical opinions agreed that plaintiff suffers from heart disease. Thus, plaintiff having established that he is unable to return to the type of work in which he had been engaged, the burden shifts to the Secretary to show that there are specific jobs in the national economy which plaintiff is capable of performing. Hernandez v. Weinberger, 493 F.2d 1120 (1st Cir. 1974); Brandon v. Gardner, 377 F.2d 488 (4th Cir. 1967). The Secretary has met this burden. Two medical opinions concluded that plaintiff's condition would not preclude him from engaging in light work. Mr. Mauchline, the vocational specialist, testified that plaintiff's work experience and educational background would enable him to perform various specific jobs of a sedentary nature which he enumerated.

■ A disability is not established merely because plaintiff cannot return to his old job. 42 U.S.C.A. § 423(d)(2)(A) states:

"[A]n individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity *that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work* which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists

for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." (Emphasis supplied).

Thus, where an insured individual suffers from an impairment which precludes one type of work, but it is shown that he is capable of engaging in other light forms of substantial gainful activity, a disability has not been established. Brown v. Finch, 429 F.2d 80 (5th Cir. 1970); Woods v. Finch, 428 F.2d 469 (3rd Cir. 1970); Wells v. Finch, 418 F.2d 1247 (4th Cir. 1969). It is immaterial that the employment for which plaintiff may be capable is less remunerative than that in which he was engaged prior to his impairment.

 Nor is a disability established when plaintiff's impairment or economic conditions merely make it difficult for plaintiff to obtain a light job which he can perform. The test for a disability is not whether an individual will be hired or whether a job vacancy exists. Rather, the criterion for disability under 42 U.S.C.A. § 423(d)(2)(A) is whether an individual's impairments are of such severity that he cannot, considering his age, education, and work experience, engage in any substantial work existing in the national economy,

"regardless of whether such work exists in the immediate area in which he lives, or *whether a specific job vacancy exists for him, or whether he would*

*be hired if he applied* for work." 42 U.S.C.A. § 423(d)(2)(A). (Emphasis supplied).

Quinn v. Richardson, 353 F.Supp. 363 (E.D.Pa.1973), aff'd, 485 F.2d 681 (3rd Cir. 1973); Torske v. Richardson, 484 F.2d 59 (9th Cir. 1973).

In Whiten v. Finch, 437 F.2d 73 (4th. Cir. 1971), the Fourth Circuit recognized that the court's concern is not with the question of whether plaintiff could be hired. The court said:

"[T]he courts are not to be concerned about the availability of jobs in the community or even their availability to one with the claimant's impairments, but only with the question of the claimant's ability to engage in gainful activity." 437 F.2d at 74.

While there is clear and uncontradicted evidence that plaintiff suffers with heart disease, diabetes mellitus, and degenerative joint disease of the hands, two out of three doctors concluded that plaintiff's condition did not medically preclude him from engaging in sedentary and light work. Whether or not this court would have reached the same decision as trier of the fact is, as already indicated, not the proper test on judicial review. Thomas v. Celebrezze, *supra,* 331 F.2d at 543; Grant v. Richardson, *supra.* Based on the medical and vocational expert opinions in the record, the decision of the Secretary that plaintiff can engage in some type of gainful employment available in the national economy and is therefore not "disabled" under the statute, is supported by substantial evidence. Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.