Charles M. LAWS, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.

No. 10328.

United States Court of Appeals
Fourth Circuit.

Argued May 4, 1966.

Decided Oct. 21, 1966.

Glen M. Williams, Jonesville, Va. (Birg E. Sergent, Pennington Gap, Va., on the brief) for appellant.

William C. Breckinridge, Asst. U. S. Atty., for appellee.

Before BOREMAN, ALBERT V. BRYAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge:

On June 20, 1961, Charles M. Laws filed his application to establish a period of disability under Section 216(i) of the Social Security Act, 42 U.S.C. § 416(i), and for disability insurance benefits under Section 223, 42 U.S.C. § 423, claiming that he had been physically unable to work since March 1961.

In March 1961 claimant was fifty-three years old. He had attended elementary school through the eighth grade and had spent his entire life working in the coal mines of southwest Virginia. Until 1957, he worked for a large mining concern, but when the large mines began to close he found employment with other mines doing "gang work" such as loading coal, moving rock and timber, and drilling. In February 1961 he quit this work allegedly because of physical impairments which he characterized as dizziness, headaches and shortness of breath.

Claimant's application was denied on October 10, 1961, and reconsideration was denied on January 20, 1962. The case was then brought before a hearing examiner of the Social Security Administration who on January 30, 1963, found that claimant was not disabled within the meaning of the Act. On April 21, 1963, the Appeals Council denied claimant's application for review. Claimant then instituted a proceeding for judicial review in the United States District Court but the Secretary moved the court to remand the case for further administrative proceedings which motion was granted.

On remand another examiner (Evans) was appointed and he found claimant to have been under a disability since June 8, 1961. Additional evidence not before the first examiner and consisting primarily of medical reports from Harlan Hospital was submitted without comment by claimant's attorney. No hearing was actually held and examiner Evans based his findings on the record of the previous hearing and the new evidence adduced. This decision was neither affirmed nor reversed by the Appeals Council. Instead the claimant was ordered to submit to further examination. After much delay and no decisive action having been taken, claimant moved the District Court to reinstate his case on the docket. Before claimant's motion was acted upon the case was again referred to examiner Evans. After a hearing on June 9, 1964, at which records of claimant's examinations and tests made in January 1964 at the University of Tennessee Hospital were presented, the examiner again determined that claimant was under a disability dating from June 8, 1961. The Appeals Council reversed and found that claimant was not disabled within the meaning of the Act. This became the Secretary's decision. Claimant again sought judicial review and, on August 14, 1965, the District Court granted the Secretary's motion for summary judgment, upholding the decision of the Appeals Council and the Secretary.

Claimant now asks review by this court. The question to be determined is whether there is substantial evidence to support the Secretary's determination that claimant was not disabled within the meaning of the Act. Finding substantial evidence to support the Secretary we affirm the judgment below.

 Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence." Woolridge v. Celebrezze, 214 F.Supp. 686, 687 (S.D.W.Va. 1963). If there is substantial evidence to support the Secretary's decision then our inquiry must terminate. It is not within the province of this court to determine the weight of the evidence; nor is it our function to substitute our judgment for that of the Secretary if his decision is supported by substantial evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4 Cir. 1962).

In Underwood v. Ribicoff, 298 F.2d 850, 851 (4 Cir. 1962), it was held that, in determining that particular claimant's condition and ability to engage in a substantial gainful activity, the Secretary should consider four elements. These are: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as found in the testimony of claimant, his wife and neighbors; and, (4) claimant's age, educational background, and work experience.

The Appeals Council in its final decision, consisting of twenty or more pages, carefully reviewed and considered the medical history of the claimant. We briefly review it here.

Dr. Gabriel, claimant's personal physician, examined him in March of 1961 and diagnosed his condition as mild hypertension. He advised claimant against engaging in any "strenuous work."

The records of the Harlan Memorial Hospital, where claimant was examined at various times from June 1961 to April 1962, indicate an absence of cardiovascular, liver, spleen, or kidney malfunctioning. There was noted a slight visual impairment. Claimant's lungs were found to be clear to percussion and his pulmonary ventilation was within the lower limits of normal. The general impression was mild hypertension and shortness of breath. Dr. Anderson, who examined the claimant in July 1961, found that while he had shortness of breath and occasional swelling of the legs he was

"otherwise o.k." Claimant was last seen at Harlan Memorial in April of 1962. He was examined by Dr. Henry Evans who found his chest clear, his heart regular and no evidence of edema. Medication was prescribed. Claimant had again visited Dr. Gabriel in February 1962 and again he was advised not to perform any "strenuous work."

In January 1964 claimant underwent an examination at the University of Tennessee Hospital. This examination revealed minimal pulmonary emphysema with little functional impairment and a minimal degree of obstruction in ventilation. No kidney disease could be conclusively established and tests seemed to negative any renal malfunctioning.

The heart studies done at the University of Tennessee revealed no enlargement. A rapid heartbeat—sinus tachycardia—was attributed to a mild upper respiratory infection. The electrocardiogram and Master's Test were normal. Recommended treatment, which was control of hypertension and treatment of the upper respiratory infection, did not indicate any permanent disability. There was no indication that claimant was unable to perform *any* work or that he was "disabled."

There is also the evidence of the Secretary's expert witness, Dr. London, who testified at the final hearing. Dr. London is a specialist in cardiovascular diseases and a diplomate of the American Board of Internal Medicine. He had examined the medical reports which had been presented. After listening to testimony describing the mining work in which claimant had engaged, Dr. London stated that "the conditions which have been documented medically in this report would not appear to be sufficient to prevent an individual from doing work of this sort." Under examination by claimant's attorney, Dr. London stated that there was no medical condition that would render claimant's return to the mines dangerous.

Before the examiner who first heard the case claimant also presented subjective evidence consisting of his own complaints, testimony of his wife, and the testimony of a neighbor. Claimant stated that he often became dizzy and "swimmy-headed"; that he lost his wind after short walks or the slightest exertion, such as mowing the lawn; and that he was incapable of doing any work around the house. Claimant's wife testified that her husband had been "short-winded" for some time, that he had difficulty sleeping, that he usually coughed the entire night and that his feet and ankles were given to swelling. While she did not think that her husband's condition was deteriorating, she thought his exhaustion prevented him from doing anything. J. K. Newman, a long-time neighbor and Treasurer of Lee County, testified that he had noticed some changes in claimant's physical condition over the past few years, namely, that claimant's face was constantly red, that he was usually short of breath, and that he was unable to walk and "get around" as he formerly did.

■ Establishment of a disability and entitlement to benefits is a two-step process. First, there must be a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;[1] and, second, there must be a factual determination that the impairment actually renders claimant unable to engage in any gainful employment. Thomas v. Celebrezze, 331 F.2d 541 (4 Cir. 1964). The medical evidence presented by the claimant fails to establish that he was suffering from any impairment the nature of which would meet the prescribed standard.

■ Here there is objective medical evidence that claimant was suffering from several diseases which had only slight cumulative effect on his life and his ability to engage in gainful activity.

1. 42 U.S.C.A. § 416(i) (1) (A), 423(c) (2) (A) (Supp.1965) See Brown v. Celebrezze, 367 F.2d 455 (4 Cir. 1966).

There is also the medical opinion of Dr. London suggesting that claimant could return to his former occupation as a miner. This judgment, while not to be considered as conclusive on the ultimate fact in issue, may serve as a basis for an evidentiary inference as to the ultimate fact. Underwood v. Ribicoff, 298 F.2d 850, 851 (4 Cir. 1962). It has been suggested that expert medical opinion by treating or examining physicians is in most cases "essential in determining with respect to a particular individual the severity of an objectively determinable physical impairment." Underwood v. Ribicoff, ibid. While Dr. London did not examine the claimant—his opinion is based on a study of the medical records and testimony presented at the hearing —this does not destroy the vitality of his opinion and its attendant inference.

Claimant argues that the Appeals Council applied an improper test in determining disability because it ignored the subjective medical evidence presented by the claimant before the hearing examiner. He contends that Underwood v. Ribicoff, supra, requires the Secretary to consider the subjective evidence presented by the claimant with all of the other evidence and that a failure to do so constitutes a basis for reversal.

■ This court said in Underwood v. Ribicoff, supra, that expert medical opinion and evidence, in itself, may not be sufficient to enable a fact finder properly to determine whether or not a disability exists within the terms of the Act. Where it is not possible to reach a determination based on such evidence subjective testimony by lay witnesses may be entitled to great weight where it is uncontradicted in the record. Id. at 852. But, in the instant case the objective medical evidence was sufficient to enable the fact finder to determine whether claimant was disabled within the meaning of the Act.

The subjective evidence adduced by claimant himself, his wife and one neighbor was not discussed in the opinion of the Appeals Council and we cannot determine what consideration that agency may have given it. However, our review of that evidence reveals nothing which would compel a finding of disability in this case. It indicates that claimant was short-winded, that he became dizzy upon exerting himself, and that he was unable to work because of these impairments. The medical evidence, objective and expert opinion, clearly supports a contrary conclusion as reached by the Appeals Council, not only as to the severity of claimant's physical ills but also as to his ability to work. The first examiner who heard the subjective evidence in its entirety found against the claimant. The subsequent findings of disability by examiner Evans were based primarily upon the results of medical tests, studies and examinations made after the first hearing.

■■ We are not unmindful of the rule to be applied when a hearing examiner's findings differ from those of the administrative agency. See Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Great weight should be given to the hearing examiner's findings where credibility of witnesses is involved. Universal Camera Corp. v. N. L. R. B., ibid.; Kerner v. Celebrezze, 340 F.2d 736, 740 (2 Cir. 1965); Heikes v. Flemming, 272 F.2d 137, 139 (7 Cir. 1959); Tucker v. Celebrezze, 220 F.Supp. 209, 215 (N.D.Iowa, 1963). See also Jaffe, Judicial Review: Question of Fact, 69 Harv.L.Rev. 1020, 1035–38 (1956). But there is no issue of substance here as to credibility of witnesses. If there was any question as to credibility the first examiner appears to have resolved it by finding against the claimant. Examiner Evans heard only the subjective testimony of claimant himself as to his impairment when the case was heard the last time but there is no indication in the examiner's decision that this evidence was a factor considered by him in arriving at his ultimate conclusion that claimant was "disabled." The Appeals Council simply disagreed with examiner Evans' interpretation and evaluation of the medical evidence.

In view of our conclusion that the court below correctly determined that the Secretary's decision is supported by substantial evidence, it is unnecessary to consider the vocational evidence presented concerning claimant's residual capabilities and the availability of work in the area. Bradey v. Ribicoff, 298 F.2d 855, 858 (4 Cir.), cert. denied, 370 U.S. 951, 82 S.Ct. 1601, 8 L.Ed.2d 817 (1962).

Affirmed.