Lee **LARGE**, Plaintiff,

v.

**Wilbur J. COHEN, Secretary Health, Education & Welfare, Defendant.**

Civ. A. No. 68-C-70-A.

United States District Court
W. D. Virginia,
Abingdon Division.

Feb. 1, 1969.

Robert T. Winston, Jr., Norton, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U. S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The decision holds that Lee Large, the claimant, is not entitled to any period of disability or disability insurance benefits on the basis of an application filed on June 9, 1966. The original decision, rendered by a hearing examiner on May 21, 1968, became "final" when the Appeals Council denied a request for review on June 26, 1968.

The facts are these. Lee Large initially filed an application for disability insurance benefits on September 13, 1962, alleging disability from April, 1954. The alleged impairments were heart trouble and a nervous condition. This application was denied on the grounds that the claimant did not meet the earnings requirements as required by law. The claimant was notified of this action by letter dated April 4, 1963.

A second application was filed on August 15, 1963, with the alleged disabling impairments listed as arthritis, heart trouble and back and spine trouble. The time of the disability was stated as being from June, 1954. This application was denied.

In his current application, filed on June 9, 1966, the claimant alleges that he became disabled in the spring of 1958 due to heart trouble, damage to his left leg, and nervousness. This application was denied initially and was also denied upon reconsideration by the Secretary. The claimant was so notified by letter dated July 25, 1966 and November 3,

1967, respectively. The claimant, believing the decision to be incorrect, requested a hearing.

A hearing was held on March 18, 1968, in Norton, Virginia. The claimant, represented by counsel, appeared and testified at the hearing. The claimant's wife also testified on behalf of the claimant. Various medical records were introduced into evidence. At the conclusion of the hearing, it was agreed that the record would remain open in order that the claimant might secure and submit some medical reports that were not then available. Two such reports were received, and the record was closed for consideration by the hearing examiner. By decision dated May 21, 1968, the hearing examiner held that, "prior to June 30, 1959, the last effective date of his application, the claimant suffered only from the medically determinable impairment of residuals of traumatic arthritis, left ankle, which was not demonstrated to be so severe * * * as to prevent him from the performance of his former employment. * * *" The decision further states that the claimant's subjective symptoms, when evaluated with due consideration for credibility, motivation and medical evidence of disorder, do not demonstrate a significant abnormality due to pain and discomfort; and that the claimant's unemployment was not casually related to his impairments.

The claimant requested a review by the Appeals Council of the hearing examiner's decision. The Appeals Council, by letter dated June 26, 1968, affirmed the hearing examiner's decision and denied the claimant's request for review. As a result of this action the claimant has petitioned this court to review the adverse decision of the Secretary. The petition for review was filed in this court on July 12, 1968.

The pertinent facts are these. The claimant was born on May 13, 1918. He has a sixth grade education. At the age of twenty years he went to work in the coal mines, his job consisting mostly of running a motor that pulled carloads of

slate out of the mines to a dump area. He also helped clean the cars when the slate was unloaded at the dump area.

In 1944, the claimant was inducted into the United States Army and served overseas until 1945 when he was honorably discharged with a medical disability. While in the service he was treated for frozen feet and has since been treated for trench foot. The claimant received a disability pension which has since been changed to nonservice connected Veterans Administration pension of $114 monthly.

Upon returning from the armed services the claimant returned to work in the coal mines at his previous position. He stopped working in 1954 because his physical condition would not allow him to run the motor that pulled the slate cars. In 1961 and 1962 the claimant returned to run a motor for some three months but it proved too great a task, and he has not worked since early 1962, except for some backyard gardening.

It appears that the claimant broke his ankle in 1934 and that a fusion of the left ankle was done in surgery performed at the Veterans Administration facility located at Mountain Home, Tennessee. The claimant testified that the operation was performed in 1955. The same ankle was broken again in 1966 and although ankle supports have been provided the claimant has experienced difficulty with the ankle for the past thirty five years.

The claimant has arthritis in the left ankle and right ankle as well as in the neck, knees, shoulders and spine. This arthritis has been present for twenty five years and has been getting worse. The claimant complains of sore knees, pain in his neck, sleeping difficulties, chest pains, breathing difficulty, heart trouble, sore feet and a nervous condition. The claimant testified, and was corroborated by his wife's testimony, that his wife had to help the claimant get dressed to go to work in 1954 and 1955 because he was in pain. Finally he could no longer go to work because of the pain in his neck, shoulder and back.

There are various medical reports in the record before the court. The earliest medical report is by a ward surgeon, K. Jamison, M.D., of the Veterans Administration facility at Mountain Home, Tennessee. The report is dated January 14, 1955. The report of the physical examination states that the claimant, then 34 years of age, was a well developed and well nourished individual, not acutely ill and mentally alert. The physical examination was essentially negative except for the extremities. Examination of the left lower extremity revealed a one half inch atrophy of the left thigh and calf as compared to the right. There was limitation of both dorsiflexion and plantar flexion of the left ankle productive of a moderate degree of pain. The initial impression was traumatic arthritis, left ankle.

On July 13, 1954, an ankle fusion was performed on the left ankle. A low leg cast was applied and the patient was allowed to be up on crutches on July 19, 1954. On July 20, 1954, the claimant was allowed to leave the hospital with the aid of crutches and afterwards returned at more or less regular intervals. On December 30, 1954 the cast was removed and the patient was fitted with a long, leather lacer brace. The claimant was released from the hospital with the final diagnosis being: "Arthritis, traumatic, ankle, left, severe. Operated—Improved."

The record next contains a report that shows the claimant re-entered the hospital at Mountain Home, Tennessee on October 1, 1957. The report reads that the system review was essentially negative. The physical examination was negative down to the extremities. The limitation of the left ankle was noted and the impression was traumatic arthritis of the left ankle involving the tibial astragular joint. The x-ray and laboratory findings were negative except for an old fracture of the lower fibula where the fusion was performed. The claimant was measured for a short leg two bar brace with a stiff ankle joint which was fitted satisfactorily and the patient dis-

charged. Again the final diagnosis was traumatic arthritis of the left ankle involving the tibial astragular joint which was treated and improved.

A report from the Southwest Virginia Community Health Services dated in 1959 states that the claimant complained of having intermittent chest pains, usually associated with exercise. The report states that the heart was not enlarged, that the lungs were clear, blood pressure normal, and no tenderness in the back. The examiner's impressions were: 1. Angina pectoris. 2. Probable anxiety state. The claimant was put on a trial of tranquilizers.

The claimant was examined by the Veterans Administration in November, 1961, because of pain in both feet. The examination states that the claimant is well developed and nourished. The report noted a definite limp favoring the left lower extremity, resulting from the traumatic arthritis which required the ankle fusion in 1954. An examination of the feet revealed, as far as the trench foot condition is concerned, a moderate degree of dependent rubor, abnormal blanching on elevation, a moderate degree of coldness, perspiration, and a foul odor with patchy areas on the plantar surface from previous desquamation of the tissues, and tenderness with painful callosity formation on the plantar surface. There were no blisters, swelling, cyanosis, gangrene or loss of structure. The report noted a moderate limitation of motion in both the left and right ankle resulting from traumatic arthritis, not from the trench foot condition. The diagnosis was residuals of trench foot of both feet.

The claimant was examined by the Veterans Administration on September 9, 1962 for pension purposes. The report contains the same information concerning the claimant's trench foot condition as the previous report in 1961. The report states: lympratic and hemic systems—normal; head, face and neck—normal; sinuses, septum and mucus membrances—nonpathologic; tonsils-atrophic; teeth-prosthetic; auricles, ca-nals and tympanic membranes—nonpathologic; eyes, external ocular parts, pupils, rotations, visual fields and ocular fundi-nonpathologic except for myopia, cardiovascular system—normal, no murmurs, thrills, irregularities, accentuation or diminution of the sounds; and no congestion in the liver, lungs or extremities. An average walking gait fails to produce any difficulty in breathing or cyanosis.

The report continues that the claimant has no varicose veins and that the respiratory system, digestive system and genito-urinary system are normal. There is no hernia. Except for noting the claimant's ankle problems with the resulting limitations and some soreness in the shoulders and tenderness around the lumbar spine, the musculo-skeletal system examination was normal. The diagnosis was 1. Residuals of trench foot—both feet. 2. Residuals of fracture—right ankle—never operated on. 3. Residuals of traumatic arthritis of the left ankle which required the ankle fusion. 4. Arthritis, not found in other joints. 5. Coronary artery disease not found. 6. Bursitis, both shoulders, and 7. Chronic lumbar strain.

The claimant was admitted to Wise Memorial Hospital in Wise, Virginia, on December 29, 1962, because of pain in the back of the neck radiating into both arms. X-rays of the cervical spine showed some osteoarthritis and spurring. The claimant was treated with a cervical collar and cervical traction which arrested the symptoms rapidly. Upon discharge the claimant continued to wear the cervical collar. The discharge diagnosis was cervical arthritis.

The record contains reports from Doctor P. G. Gregoriou, who is a general practitioner and the treating physician of the claimant. In a letter dated March 18, 1963, Dr. Gregoriou stated that the claimant had developed cervical osteoarthritis which was symptomatic, but that "his bigger problem is his involutional depression" which was being treated by another doctor. Dr. Gregoriou enclosed with his report an orthope-

dic consultation from Dr. Robert T. Strang and a surgical consultation from Dr. Frank W. Hastings. The consultation from Dr. Strang, after reciting much of the same as the other reports, states that x-rays were made and revealed no definite narrowing of disc spaces but that it was possible that the claimant was having symptoms of a cervical disc. Dr. Strang recommended that if the pain persisted the claimant should be evaluated by a neurosurgeon for possibility of myelography. The surgical consultation from Dr. Hastings states that the pain in the neck was greatly relieved by treatment with cervical traction and the cervical collar.

In October of 1964, Dr. Gregoriou made a diagnosis of 1. Involutional depression. 2. Cervical osteoarthritis with nerve root involvement, and 3. Coronary disease by history.

In a report dated September 22, 1967, Dr. Gregoriou reported the claimant to be moderately depressed, and having a functional heart disease, a weak left foot from multiple fractures and cervical arthritis. He recommended an internist and psychiatric evaluation to establish an accurate prognosis.

The record contains a psychiatric consultation by Dr. Pierce D. Nelson dated January 2, 1963. The report states that the claimant is an anxious and tense person who has rather somatic complaints of pain. The report continues that the claimant speaks in a rather complaining and whining manner. His orientation is good, as are his memory and recall functions, but his general performance is of the overly dramatic and ultra dramatic, which suggest hysterical qualities in his emotional defenses. The claimant's psychiatric diagnosis is in line with a psychoneurotic disorder with somatic conversion symptoms or with a psychoneurotic overlay of neck symptoms due either to injury or arthritis. It was suggested to the claimant that he accept medication of tranquilizers.

A report by Dr. Frank Hastings in April, 1963, reports that the claimant had pain in his neck radiating into both arms with muscle atrophy on the left. There was x-ray evidence of cervical arthritis. The diagnosis was 1. Osteo arthritis. 2. Pyschoneurotic disorder with somatic conversion.

Included in the record are reports of contacts by representatives of the Department of Health, Education and Welfare and also the earnings records of the claimant.

■ This court, in reviewing the Secretary's decision, may not set it aside if such decision is supported by substantial evidence. Willis v. Gardner, 377 F.2d 533 (4th Cir.1967); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir.1962). Substantial evidence is that which a reasoning mind would accept as sufficient to support a particular conclusion. It is more than a scintilla of evidence, but less than a preponderance. If there is substantial evidence to support the decision of the Secretary, then our inquiry must end. Laws v. Celebrezze, 368 F.2d 640 (4th Cir.1966); Celebrezze v. Bolas, 316 F.2d 498 (8th Cir.1963). In order for the claimant to establish entitlement to a period of disability or to disability insurance benefits, it is necessary to establish that he was under a disability from a time on or prior to June 30, 1959. This date has been established from the claimant's earnings record as being the last time the special earnings requirements of the Act were met. The burden of establishing the claim is upon the claimant, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir.1964), and he must establish his disability as of the time he last met the earnings requirements, in this case, as of June 30, 1959. Carter v. Celebrezze, 367 F.2d 382 (4th Cir.1966). An impairment that had its onset or became disabling after the earnings requirements were last met cannot be the basis for a favorable finding of disability. Taylor v. Ribicoff, 204 F.Supp. 144 (S.D.W.Va.1962). In reviewing the record, this court finds substantial evidence to support the decision of the Secretary. The hearing examiner's decision was formulated in accordance with the law as set forth in the Social Security

Act prior to July, 1965, and also under the 1965 and 1967 amendments thereto, since the application was dated June 9, 1966 and asserted a disability in the year 1958. Prior to 1965, the definition of disability required that the impairment be one that could be expected to end in death or be of a long-continued and indefinite duration. As amended in 1965, the claimant must be unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C.A. §§ 416(i) and 423. The claimant must support his allegations by medical evidence, although no unreasonable or unjust obstacles can be put in his way. Morgan v. Gardner, 264 F.Supp. 576 (S.D.Miss. 1967). The Social Security regulations require that subjective complaints be substantiated by objective clinical and laboratory findings, 20 C.F.R. § 404.-1523 (1968), and also that an impairment is not disabling if it is remedial with reasonable effort and safety. 20 C.F.R. § 404.1502 (1968). The only impairment that has been documented by medical reports with any certainty prior to June 30, 1959 is the left ankle fusion that was performed in 1954. Both reports, one in 1955 and the other in 1957, state that this traumatic arthritis was improved both after the operation and after treatment. Both reports state that an ankle brace was fitted satisfactorily and the claimant was released in an improved condition. Another report in February of 1959 adds little to show that the claimant suffered from a disability prior to June 30, 1959.

 The record contains other reports of medical examinations that were conducted subsequent to the date that the claimant last met the special earnings requirement. Upon reviewing these reports, the court finds no evidence that would establish a disability as of the date the claimant last met the earnings requirement and thus justify

setting aside the decision of the Secretary. In so deciding we are mindful that it is not within the province of the reviewing court to weigh evidence or to substitute our judgment for that of the Secretary if his decision is supported by substantial evidence. Laws v. Celebrezze, 368 F.2d 640 (4th Cir.1966). It is also to be noted that great weight should be given to the hearing examiner's findings where the credibility of witnesses is involved. Laws v. Celebrezze, 368 F.2d 640 (4th Cir.1966). Viewing the record in its entirety leads this court to the conclusion that the decision of the Secretary is supported by substantial evidence.

Accordingly, for the foregoing reasons, the motion for summary judgment filed on behalf of the Secretary is hereby granted.

The clerk is directed to send a certified copy of this opinion and judgment to counsel of record.