**Rafael CANDELARIA**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 74–468.**

United States District Court,
E. D. Pennsylvania.

Feb. 6, 1975.

Tri-County Legal Services, Eugene F. Zenobi, Mark I. Weinstein, Reading, Pa., Alan N. Linder, Lancaster, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Susan M. Marmon, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

GORBEY, District Judge.

This is an action under § 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, denying plaintiff's claim for a period of disability and for disability insurance benefits.

The administrative record in the case shows that plaintiff filed an application for a period of disability and disability insurance benefits on April 14, 1971, alleging that he became disabled and unable to work prior to March, 1970, at the age of 35 (tr. 68–71). A prior application for benefits had been filed on March 29, 1968, in which he alleged dis-

ability and inability to work as of January 25, 1965 (tr. 60–63). Plaintiff was successful in this application and a period of disability was established in accordance with the plaintiff's contention as to the date of the beginning of his disability (tr. 124). Subsequently, it was determined initially by the Bureau of Disability Insurance of the Social Security Administration the disability ceased as of March, 1970 (tr. 64). Reconsideration of that determination pursuant to plaintiff's request resulted in a finding that the initial determination was correct (tr. 66–67). There was no appeal from this decision. His current application was denied initially and on reconsideration by the Bureau of Disability Insurance (tr. 72–73, 67–77) after evaluation of the evidence by a physician and a disability examiner from the Pennsylvania State Agency (tr. 122–123). The administrative law judge considered the case *de novo* with plaintiff, his attorney, and a vocational expert present. The determination was made on October 11, 1973 that plaintiff was not disabled (tr. 6–10). This decision was approved by the Appeals Council on January 25, 1974 (tr. 3), the result of which the administrative law judge's decision became the final decision of the Secretary.

Since the record shows that the plaintiff continued to meet the insured status requirement through March 31, 1975, it appears that the only issue before the court is whether the Secretary's final decision that plaintiff is not entitled to disability insurance benefits or a period of disability is supported by substantial evidence.

The scope of judicial review is determined by Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), which states:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ."

A multitude of cases establish that: "substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .'" NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939); Large v. Cohen, 296 F.Supp. 255 (W.D.Va.1969); Walters v. Gardner, 397 F.2d 89 (6th Cir. 1968); Ginsburg v. Richardson, 436 F.2d 1146 (3d Cir. 1971); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966); Rivas v. Weinberger, 475 F.2d 255 (5th Cir. 1972).

Courts may not resolve conflicts in the evidence or decide questions of credibility. Moon v. Celebrezze, 340 F.2d 926 (7th Cir. 1965). It is for the Secretary and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony. Floyd v. Finch, 441 F.2d 73 (6th Cir. 1971); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964). The resolution of conflicts in the evidence, including conflicting medical opinions and determinations of the credibility of witnesses, are not for the courts; that resolution is solely within the province of the Secretary as the trier of the facts. Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

The aforementioned principles of law must be applied in determining whether or not there is "disability" as defined in § 223(d)(1):

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .

(B) . . .

(2) For purposes of paragraph (1) (A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) . . .

(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4) . . .

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence or the existence thereof as the Secretary may require.

■ It is to be noted that disability under the Act means the inability to engage in *any* substantial gainful activity. Consequently, if the evidence indicates that the insured individual is incapacitated from heavy work or work which requires certain kinds of exertion but nevertheless is able to engage light forms of substantial gainful activity, a "disability" within the meaning of the Act has not been established. Valenti v. Secty. of HEW, 350 F.Supp. 1027 (E.D. Pa.1972); Hemphill v. Weinberger, 483 F.2d 1137 (5th Cir. 1973); Farmer v. Weinberger, 368 F.Supp. 1 (E.D.Pa. 1973); Walters v. Gardner, 397 F.2d 89 (6th Cir. 1968).

■ The inability to engage in any substantial gainful activity must be by reason of any medically determinable, physical or mental impairment. It has been determined that a medically determinable physical or mental impairment is one that results from anatomical, physiological, or psychological abnormality which is demonstrable by medically acceptable clinical and laboratory diagnostic techniques pursuant to 42 U.S.C. A. § 423(d)(3). Kirkland v. Weinberger, 480 F.2d 46 (5th Cir. 1973), cert. denied, 414 U.S. 913, 94 S.Ct. 255, 38 L. Ed.2d 155 (1973).

■ Whether or not subjective complaints of a plaintiff may serve as the basis for a finding of a medically determinable impairment or disability has been the subject of much litigation. Such a claim must, of course, be substantiated by clinical and laboratory findings, 42 U.S.C.A. § 423(d)(5); thus, pain is recognized as a disabling factor for Social Security benefit purposes only if it is not remediable or where it is of such a degree as to preclude an individual from engaging in substantial gainful activity. The fact that a person cannot work without some pain does not necessarily satisfy the test for disability. Emmette v. Richardson, 337 F.Supp. 362 (W.D.Va.1971); Pisarcik v. Weinberger, 363 F.Supp. 514 (W.D.Pa.1973).

■ The burden of proof is upon the plaintiff to show by objective medical evidence that the pain is disabling. Farmer v. Weinberger, *supra*, Calpin v. Finch, 316 F.Supp. 17 (W.D.Pa.1970).

Furthermore, pain as a disabling factor was the subject of discussion in the important case of Page v. Celebrezze, 311 F.2d 757 (5th Cir. 1963). There the court said:

"If pain is real to the patient and as such results in that person being physically unable to engage in any gainful occupations suited to his training and experience, and this results from 'any medically determinable physical or mental impairment' the disability entitles the person to the statutory benefits even though the cause of such pain cannot be demon-

strated by 'objective clinical and laboratory findings'. We are dealing with such a case here. This is not the simple case of a person complaining of pain for which none of the doctors can find any basis, either organic or neurotic. Here we are dealing with a person about whom there is almost substantial agreement that she is disabled in fact by reason of psychosomatic or psychoneurotic involvements."

The court continued:

"The statute does require that the disabling condition result from a 'medically determinable physical or mental impairment' but it does not restrict medical investigation, examination and opinion to only those things described as 'objective clinical' or 'laboratory findings'. Where the medical evidence of record before the trier substantially indicates, as it does here, that the ascertainment of the existence of actual disability depends upon determining the truth and reliability of complaints of subjective pain or the medical significance of such complaint once credited, the trier of the fact—whether Examiner or Appeals Council—has a duty to pass on that issue. The trier cannot abdicate this difficult role by leaving it to that very limited field of medical science (if there is such) that deals alone with objective symptoms and demonstrable laboratory analysis." *Supra,* at pages 762 and 763.

The finder of fact may, however, reject the claimant's unsupported assertion of pain if he finds them not credible. Goodwin v. Gardner, 250 F.Supp. 454 (N.D. Cal.1966); Farmer v. Weinberger, *supra,* 368 F.Supp. page 5.

 The burden of proof is also upon the plaintiff to show that he does not have the ability to engage in some type of substantial gainful work which exists in the national economy because of the severity of his disability. Johnson v. Finch, 310 F.Supp. 1235 (D.Kan. 1970), aff'd, 437 F.2d 1321 (10th Cir.

1971). Whether there are job openings for the particular plaintiff, whether he would actually be hired, or whether such person could find work to do in this area are factors which have been held that cannot be used as a basis for determining whether an individual is disabled under the present Act. Quinn v. Richardson, 353 F.Supp. 363 (E.D.Pa.1973), aff'd, 485 F.2d 681 (3d Cir. 1973). With respect to this issue, the evidence of a vocational witness is acceptable. Ross v. Richardson, 440 F.2d 690 (6th Cir. 1971).

Attention will now be turned to the evidence as shown in the record with respect to which the aforementioned principles of law must be applied, determining whether there is substantial evidence to support finding of the Secretary.

The claimant, 36 years of age at the time of the hearing before the administrative law judge, was born in Puerto Rico on May 7, 1934. He left school while in the third grade and came to the United States when about seventeen years of age. Claimant testified that before coming to the United States he had worked about two months in sugar cane (tr. 23). Further questioning developed that prior to working in the sugar cane fields, he had worked at home where his work was in connection with the cultivation of coffee and bananas (tr. 38). After coming to the United States he was employed for about a year to pick gladiolas in a greenhouse. For about 2 years he worked in a restaurant washing dishes. He also operated a molding machine in the plastic industry. In this work he would open the machine, insert plastic material, close the machine, and the machine pressed the material into a mold. The plastic material was then placed in boxes which, with their contents weighed about 60 lbs. The boxes were then removed after being stacked to a height of about 5 feet. This work he performed for about 3 years, stopping work in 1965, except for some work around the house, such as cutting the grass and planting flowers. Oc-

casionally he would help his wife with the housework (tr. 24, 25, 28).

Plaintiff's disability began in 1965 when as a result of an automobile accident, he sustained a fractured dislocation of one of the cervical vertebrae. The plaintiff was hospitalized on March 26, 1965, complaining of pain in the neck, radiating down his right arm. Surgery was performed and a ruptured cervical disc was removed on the right at C5–C6 and facetectomy was done at C6–C7 on the right. He was discharged on April 10, 1965 with a final diagnosis of "ruptured cervical disc right 5–C" at which time he had only slight arm pain (tr. 89–90).

On August 2, 1967, claimant was admitted to the hospital complaining of pain in the back of his neck. A physical examination showed him to be well nourished and in no acute distress. The diagnostic impression was a non-union of the 7th cervical vertebra spine. On August 3, 1967, surgery was performed and an excision of the 7th cervical vertebra spine was carried out (tr. 95–97).

Plaintiff was again admitted to the hospital on October 27, 1967, complaining that after the operation he had pains in his neck, right shoulder and upper arm. In a note dated March 25, 1968, the hospital stated that the plaintiff was unable to work and would be unable to work until the chronic problem with his neck was resolved. The possibility of relief through surgery was noted (tr. 93). Subsequently, on December 9, 1968, Dr. Ernest E. Reigh, a neurosurgeon, examined the plaintiff for evaluation of complaints of some aching in his neck. He complained that he had pain in the neck aggravated by dampness and some pain in the right arm. The neurosurgeon was unable to find any evidence of any neurological or neurosurgical disease to explain the plaintiff's complaints (tr. 99–101). On January 28, 1969, a report was submitted by the Community General Hospital with respect to x-ray examination of plaintiff's cervical spine. While otherwise it appeared normal, the x-ray did show that the cervical spine was fused into a solid block embracing the 5th, 6th and 7th bodies. On January 28, 1969, at the request of the State Agency, the plaintiff was examined by Dr. E. Karl Houck, orthopedic surgeon, the plaintiff claiming pain in the neck and in the right arm at the elbow. The physical examination showed no loss of motion in the left arm, but he demonstrated loss of ability to raise his right arm above 90°. On March 11, 1970, Dr. Cinelli, plaintiff's treating physician, reported that examination revealed that plaintiff walked without help and had no trouble sitting on the examining table and getting off it. Plaintiff complained of pain at the extreme of all motions of his neck, but there was normal range of motion in the shoulders, elbows, wrists, fingers and forearm. The physician diagnosed the condition as bony ankylosis of the cervical spine from C–5 to C–7 (tr. 106). Subsequently, on June 9, 1971, Dr. Cinelli reported that since March 9, 1970, plaintiff had been maintained on medication, Darvon, Sparine and Nembutal (exhibit 23; tr. 108). He recommended to the plaintiff that he try to find work which would not involve a great deal of physical activity. Plaintiff was subsequently examined by Dr. Lowell C. Yund, orthopedic surgeon, on July 9, 1971. Thereafter, he was examined by Dr. Philip Goldfedder, neurosurgeon, on May 26, 1972. Plaintiff complained of right elbow pain of three years duration, but on examination plaintiff appeared to be in no particular distress.

The record also shows that on March 29, 1968, plaintiff filed a claim for benefits, alleging disability and inability to work as of January 25, 1965. This application was allowed and a period of disability was established as of the plaintiff's alleged date of onset of disability (tr. 60–63; 124). On April 20, 1970, the Bureau of Disability Insurance of the Social Security Administration determined that plaintiff's disability had ceased as of March, 1970. Following plaintiff's request for a reconsideration, it was determined that the initial action was correct (tr. 64, 66–67). On April

14, 1971, plaintiff filed an application for disability benefits claiming that he became disabled and unable to work prior to March, 1970. This application was denied initially, and on reconsideration by the Bureau of Disability Insurance, upon evaluation of the evidence by a physician and a disability examiner from the Pennsylvania State Agency (tr. 68–71; 72–73; 67–77; 122–123). As previously stated, the case was heard *de novo* by the administrative law judge who on October 11, 1973, found that plaintiff was not disabled. This decision became the final decision of the Secretary when the Appeals Council approved it on January 25, 1974. There is ample medical evidence to support a finding that the claimant's cervical condition was not of such severity as to prevent him from performing any form of work activity. Dr. Cinelli saw the plaintiff about once every one to two months according to a letter dated March 11, 1970 and directed to the Bureau of Vocational Rehabilitation, Disability Determination Section:

"Examination at this time shows that he walks independently and has no trouble sitting on the examining table and getting off. There is a large troph in the posterior neck area from the occiput to C–7. The spinous processes in all of these areas are missing. There is tenderness on the paracervical muscles in these areas. Flection of the neck is 50% limited and extension is about 75% limited. Right and left lateral bending are each limited about 75%. Rotation is normal bilaterally. There is pain at the extremes at all motions. Deep tendon reflexes show that the biceps reflects is absent on the right, but present on the left. Triceps reflexes and brachial radialis reflexes are present bilaterally. There is no brachial atrophy by measurement. There is no focal muscle weakness by individual muscle testing. There are good radial pulses bilaterally. There is normal range of motion in the shoulders, elbows, wrists, fingers and forearm. Diagnosis is a bony ankylosis of the cervical spine from C–5 to C–7." Exhibit 21 (tr. 106)

Exhibit 23, dated 6/9/71, is a report by Dr. Cinelli to the Bureau of Rehabilitation. In this report, he states:

"Since 3/9/70, this patient has been maintained on Darvon compound, Sparine and Nembutal. It has been recommended to him that he try to obtain work which does not involve a great deal of physical activity. At one time there had been some attempt to getting a nightwatchman's job, but this was never successful.

"He continues to have the same complaints as previously and the examination remains unchanged.

"I think this patient's prognosis is poor, partly because he does have true physical disability and partly because he is poorly motivated. I have seen patients in my experience with worse physical disabilities who have worked happily."

Exhibit 24, tr. 112, is the report of Dr. Lowell C. Yund, orthopedic surgeon, under date of August 9, 1971:

"I examined Rafael Candelaria on July 9, 1971 . . . His pain has continued. He currently sees Dr. Cinelli, an orthopedist in Reading, who gives him medications. This man states he wakes up with pain in the back of his neck and his upper back and this radiates to his right arm to the elbow. His symptoms are unchaged (sic) with daily living but are aggravated by lifting. He used to work as a machine operator; he has not been able to work since 1964. He says he is otherwise in good health.

"On physical examination he has a healed incision in posterior cervical region from the level of C 2 to T 2. Tilting right and left of his cervical spine are 45 degrees; rotations— right 70 degrees with pain left 80 degrees. Flex 45 degrees with moderate pain; extends 45 degrees with minimal pain. His arms, shoulders, and elbows show a full range of painless

motion in a normal neurologic examination. I x-rayed his cervical spine and he has a solid fusion from C 4 through and including C 7. Oblique views show arthritis at the inner vertabal fora mina.

"It is my opinion that this man is completely disabled by the cervical arthritis and the ensuing infusion."

Exhibit 26 at pages 114 and 115 of the transcript is a report by a neurosurgeon, Philip Goldfedder, to the Bureau of Vocational Rehabilitation. In this report he writes, *inter alia:*

"On examination, this patient appears to be in no particular state of distress with a blood pressure of 118/70 in the right arm. He has well healed scars in the posterior aspect of the cervical spine and another on the left anterior aspect of the neck. In the posterior region there is the indentation noted throughout the extent of the wound. He has marked resistance of movement of his neck and much of it, in my opinion is on an active rather than a passive resistance. There is no definite focal motor weakness. He appears to have no sensory changes. The deep tendon reflexes are somewhat diminished but they are symmetrical in the upper extremities and more active and equal in the lower extremities. Pathological reflexes were not elicited. Coordination and gait appear to be intact. The superficial abdominal reflexes are decreased to absent and symmetrical.

"In my opinion, Mr. Candelaria has evidence of a cervical bony ankylosis. I find no evidence to suggest cervical spinal cord involvement such as cervical root compression. Further, in my opinion, he could return to work and is impaired only to the extent that he could not do repetitive movements with his head; that is, turning it from side to side quickly or repetitive movements with his shoulder particularly with carrying any heavy objects."

From this review of the record, it appears that although there was a conflict of opinion, there is substantial evidence to support the administrative law judge's finding that the claimant's cervical condition was not of such severity as to prevent him from performing some substantial gainful work. It is well established that:

"In addition to objective medical facts and expert medical opinions, the Hearing Examiner must consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors; and all of these factors must be viewed against the applicant's age, educational background and work experience." Mode v. Celebrezze, 359 F.2d 135, 136 (4th Cir. 1966).

Indeed, pain, in itself, may be a disabling condition. Marunich v. Richardson, 335 F.Supp. 870 (W.D.Pa.1971). The plaintiff testified that his main difficulty was continuous pain in the back of his neck, a pain that never goes away, a severe pain that feels like someone is putting needles into his back. The pain is especially bad when he gets up in the morning; Dr. Cinelli prescribed Darvon for this condition and he takes it about every 3 hours. Sometimes the pain is so bad that he has to get up during the night to take the Darvon; he estimated that this occurred about 4 or 5 times a week. He also has pain in the back region down to the waistline, primarily on the right side (tr. 27, 31, 32). Plaintiff testified that he also had headaches for which he took aspirin. The pain in his neck and shoulder intensifies where there is excessive noise or vibration (tr. 35–36). The pain causes the plaintiff to tire easily when he engages in some sort of physical activity, such as trying to sweep the floor; the movement begins to bother his back.

With respect to the question whether the pain is so intense as to preclude the plaintiff from performing a substantial, gainful activity, the hearing examiner wrote:

"While pain is subjective and difficult to evaluate, it is well known that pain of long duration is always of low

intensity. Moreover, where pain is severe, persistent and long standing, there will normally be such signs as impaired nutrition, muscle atrophy and spasm. There is no such evidence here. Another clue to the severity and constancy of pain is the need for such dramatic pain killers as cocaine, demoral or codeine. There is no evidence that the claimant required such medication. The undersigned finds that the substantial evidence of record does not establish pain of such persistence and severity as to warrant a finding that the claimant's capacity had been seriously limited." (tr. 9)

 The examiner's conclusion with respect to the severity of the pain is based partly upon his finding that there was no need for such a dramatic pain killer as Cocaine, Demoral or Codeine, although no authority is cited to support the inference that the effect of pain on a specific individual can be discounted unless a narcotic, such as Cocaine, Demoral or Codeine is prescribed.

Also, there is no citation of authority to support the examiner's conclusions as stated in the first two sentences of the preceding quotation.

Pain, in itself, may be a disabling condition. Marunich v. Richardson, *supra,* and the present record includes medical data which supports the plaintiff's claim of pain, and the plaintiff's testimony, if believed by the examiner, would support a finding of disability due to pain itself. It has been held that:

". . . even pain unaccompanied by objective observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits . . ." Ber v. Celebrezze, 332 F.2d 293, 299 (2d Cir. 1964).

Although the examiner's ultimate conclusion is supported by disputed, but nevertheless, substantial medical evidence, that fact is immaterial unless, for *valid reasons,* the testimony of the plaintiff as to the pain and its effect on him, is to be discounted or disbelieved.

It does not appear that the examiner's evaluation of the testimony of plaintiff as to pain and its effect on him, is in accord with the requirements of Bittel v. Richardson, 441 F.2d 1193 (3d Cir. 1971), Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974), and Generella v. Weinberger, 388 F.Supp. 1086 (E.D.Pa. 1974).

In view of the conclusion already reached, it is not necessary to review the record with respect to the testimony of Mr. G. Dale Freidman, Vocational Expert, with respect to the type of work which the plaintiff could, on the basis of Mr. Freidman's opinion, perform in spite of his present condition (tr. 44–53).

Accordingly, the cross-motions for summary judgment must be denied.