**Daniel A. NOVAK, Plaintiff,**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. 80 C 6688.**

United States District Court, N. D. Illinois, E. D.

Oct. 29, 1981.

Thomas R. Nash, Burke & Smith, Chartered, Chicago, Ill., for plaintiff.

Michael J. Zarski, Asst. Regional Atty., Dept. of Health and Human Services, Eileen M. Marutzky, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Daniel Novak ("Novak") seeks review of a decision of the Secretary of Health and

Human Services (the "Secretary") denying Novak disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423. As is typical in this class of cases, the parties have filed cross-motions for summary judgment. For the reasons stated in this memorandum opinion and order:

(1) Both motions are denied.

(2) This court reverses the Secretary's decision and remands the cause to the Secretary for a rehearing in light of the new evidence offered by Novak at the Appeals Council level and therefore not considered by the Administrative Law Judge ("ALJ").

### Facts

Novak was employed as a pipefitter and welder until February 1978, when he injured his back at work. Novak worked sporadically from February to October 1978 while receiving treatments for his injury. When on vacation in October 1978 Novak became totally crippled and had to be flown back home and hospitalized. During his hospitalization from November 14, 1978 through December 26, 1978 Novak underwent a lumbar laminectomy and excision of a ruptured disc. Since then Novak has been unemployed.

On May 7, 1979 Novak filed an application for disability insurance benefits. After his application was denied by the Bureau of Disability Insurance, Novak requested and received a hearing (held April 9, 1980) before ALJ Robert Camenisch. On June 13, 1980 Judge Camenisch, having considered the testimony of Mr. Novak (then not represented by counsel) and a large number of medical records, denied Novak's claim.

Novak later obtained counsel and sought review of Judge Camenisch's decision before the Appeals Council. In addition Novak's counsel sent the Appeals Council seven items of medical evidence not presented to Judge Camenisch.[1] Upon consideration

---

1. Under the applicable Social Security Administration regulation, 20 C.F.R. 404.970, a decision of an ALJ is reviewable by the Appeals Council where:

of the entire record, including the additional medical evidence, the Appeals Council concluded that there was no basis for granting review of Judge Camenisch's decision. Novak then filed this action under 42 U.S.C. § 405(g).

### Evidence Before Judge Camenisch

Novak is unquestionably unable to return to his employment as a pipefitter and welder. All the medical evidence confirms that he can no longer undertake heavy physical labor. But an individual can qualify for disability insurance only if, 42 U.S.C. § 423(d)(2)(A):

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Judge Camenisch held that although Novak suffered from lower back syndrome, diabetes mellitus, mild hypertension and obesity, he was still able to perform sedentary work. Thus the question before this Court is whether Judge Camenisch's finding that Novak is able to do sedentary work is "supported by substantial evidence." 42 U.S.C. § 405(g).

Judge Camenisch questioned Novak at some length as to his perception of his disability and his ability to perform various day-to-day functions. Though Novak testified that he was severely restricted in the performance of many actions, it was not unreasonable for Judge Camenisch to read Novak's testimony as indicating he was still able to perform sedentary work. In addition Judge Camenisch found that "claimant's representation as to the limiting effect of chronic pain are exaggerated and the pain is not so severe, persistent or pervasive as to prevent the performance of sedentary employment." That finding was also supportable, for the ALJ is permitted to consider the claimant's credibility on that score. *Candelaria v. Weinberger*, 389 F.Supp. 613, 617 (E.D.Pa.1975).

Judge Camenisch also considered a number of medical evaluations:

(1) In a May 25, 1979 report to the Federal Disability Program, Novak's attending physician Dr. Heilbronn stated that his stance, gait and coordination of extremities were normal. That report also said that Novak is restricted in bending and stooping and that he cannot walk or stand for periods as long as six to eight hours.

(2) Dr. White's May 30, 1979 physical capacities evaluation found Novak capable of performing light work. Light work is defined as "an ability to stand and walk at least six hours in an eight hour work day, lift and carry up to ten pounds about two-thirds of the work day, and occasionally lift 20 pounds maximum. Light work may require sitting most of the time, but has a significant degree of pushing and pulling of arm and/or leg controls." That evaluation was based on a review of the medical records, *not* an actual examination of Novak.

(3) Another doctor's September 13, 1979 physical capacities evaluation (the name on the document is illegible) again stated Novak was capable of performing light work. Again the evaluation was based on a review of the medical evidence on file, not an actual physical examination.

(1) there appears to be an abuse of discretion by the ALJ;
(2) there is an error of law;
(3) the ALJ's action, findings, or conclusions are not supported by substantial evidence; or
(4) there is a broad policy or procedural issue which may affect the general public interest.

If new and material evidence is submitted with the request for review, the entire record will be evaluated and review will be granted where the Appeals Council finds the ALJ's action, findings or conclusions contrary to the weight of evidence currently of record.

(4) On February 28, 1980 Dr. Heilbronn sent a letter to the Federal Disability Program stating:

(a) "He continued to complain of persistent low back and right leg pain. His pain medications gave him only partial relief. Bed rest and transcutaneous nerve stimulator had been of little help."

(b) "His operative wound was well healed. He dressed promptly. He walked well without a limp and well on his toes and heels. He bent forward to 50 cms. from the floor with his outstretched fingers."

(c) "It is my impression that Mr. Novak is unable to engage in any further physical work requiring bending, lifting, stooping or prolonged period of sitting."

(5) Dr. Kranzler's brief document dated March 13, 1980 states "Daniel Novak is 100 percent disabled from engaging in gainful employment." Nothing in the record reveals whether that statement was made from personal examination or from a review of medical records.

Based solely on that evidence this Court could likely find a substantial basis for Judge Camenisch's decision, though the decision for the trier of fact would be an extremely close call. Novak's own testimony is inconclusive and the core of the case rests in the medical evidence. While the two doctors who reviewed the medical files found Novak able to perform light work, the only physician actually to examine Novak (Dr. Heilbronn) had a very different viewpoint. In direct contradiction to the other doctors, he specifically found Novak unable to sit for six hours out of an eight-hour working day. In a case much like this one, *Allen v. Weinberger*, 552 F.2d 781, 785–86 (7th Cir. 1977), our Court of Appeals taught that the opinion of a physician who actually examines a patient must be accorded considerably greater weight than those of physicians who merely examine the files.

Judge Camenisch resolved the differences in this way:

While straight leg raising has been reported by Dr. Heilbronn to be positive bilaterally, the report from the Rehabilitation Institute of Chicago January 1980 reported the straight leg raising to be negative. In May 1979 the attending physician reported the claimant's stance, gait, and coordination were normal. There is no evidence of significant limitation of motion. The medical evidence as a whole does not reflect conditions which would prevent the performance of sedentary employment as defined in Regulation 404.1510. The attending physician reported in February 1980 that the claimant could not work in a job which would require bending, lifting, or prolonged sitting, but the clinical evidence does not reflect a limitation on sitting to the degree which would prevent sedentary employment.

Essentially the ALJ held that the evidence "as a whole" indicated Novak could sit for long enough periods of time to hold down a sedentary job. But as the next section of this opinion demonstrates, that evidence was very different from the evidence "as a whole" presented to the Appeals Council.

*Evidence Before the Appeals Council*

After obtaining counsel, Novak presented seven additional pieces of evidence to the Appeals Council. Four are of material significance, though they do not all point in the same direction:

(1) Undoubtedly the most significant piece of evidence was the report submitted by Dr. Heilbronn to the CUNA Mutual Insurance Society. There Dr. Heilbronn said Novak was totally disabled and would be unable to perform any sort of work, and that condition was not expected to change in the future.

(2) As to the degree of pain experienced by Novak, Dr. Molloy's November 1979 report states that the "patient's pain intensity is 4 to 5 on a scale of 10 generally."

(3) In a report written after a physical examination, Dr. Makarabiromya stated:

It was my impression Mr. Novak was doing quite well following his lumbar laminectomy. He had been advised regarding back strengthening exercises and increased activity. He had been advised to return to see us in four weeks. It is unknown at this time how long he will be disabled.

(4) Dr. Addison's February 1980 report after examining Novak states the possibility that while Novak could not return to his prior employment he might be able to handle other employment.

Clearly that evidence is highly significant to the total evidentiary picture. One document contains a statement that Novak is completely disabled, made by the person with the best knowledge of his condition, his attending physician Dr. Heilbronn. Another reflects current disability and an uncertain future. All four documents are based on *actual* examinations of Novak rather than an examination of his medical files.

Given its potential significance, that evidence should have been considered by the ALJ who heard the case. Its consideration by the Appeals Council is not a suitable equivalent. Judge Camenisch based his decision (as the Appeals Council *could not*) on a combination of live testimony and documentary evidence.

Nor does that difference in the level of consideration bespeak only a semantic distinction. For example, while pain alone is not sufficient to render Novak disabled, a certain level of pain plus a certain level of disability *might* render him unable to perform sedentary work. As already stated, part of Judge Camenisch's determination included a finding that Novak exaggerated the level of pain he suffered from. That finding could have been made only by the initial fact finder. But such a judgment must be made in light of all available medical evidence. For the Appeals Council to consider the additional medical evidence is simply not the same as having it considered by the ALJ.

It must be remembered that by regulation the ALJ and the Appeals Council operate on different standards of proof. As the fact finder the ALJ resolves conflicting evidence. His or her decision can be overturned by the Appeals Council "if not supported by substantial evidence." That distinction could well change the impact of the new evidence Novak submitted.[2]

42 U.S.C. § 405(g) provides that a District Court:

> may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a proper proceeding....

That section does not in terms apply here. Both the ALJ and Appeals Council proceedings are precursors to the Secretary's decision, so that the new medical evidence was "taken before the Secretary" in the statutory sense.

Nonetheless the criteria expressed in Section 405(g) may be profitably employed for purposes of analysis. Materiality of the new medical evidence is obvious. This Court further finds there was good cause for Novak's failure to provide that evidence initially. Novak has but a tenth-grade education and did not have an attorney at the ALJ hearing. That alone can account for Novak's failure to provide some of the documents. But the most important of the new documents, the insurance form filled

---

2. Appellate consideration always poses such problems. Assume for illustrative purposes that the evidence can be quantified and that the ALJ viewed the initial presentation as weighing 52–48 *against* disability. His decision denying benefits would of course have to be upheld by the Appeals Council if it considered (1) the same evidence as weighing (say) 60–40 against disability and (2) the added evidence as shifting the balance by 5 percentage points, or to 55–45 against. If the ALJ had been tendered the added evidence and perceived it in the same way (a 5-point shift), he would have *granted* benefits because of his finding a 53–47 balance in Novak's favor. And although the Appeals Council would—as a de novo matter—have ruled the other way (given its 55–45 view), it would have to *uphold* the ALJ decision granting benefits as clearly "supported by substantial evidence."

out by Dr. Heilbronn, was not even in existence at the time of the hearing. It was dated April 30, 1980, shortly *after* the hearing before Judge Camenisch. By definition there is "good cause" for that evidence's omission from the record before the ALJ.

This opinion should not however be misunderstood as invalidating Regulation 404.-970 (see n. 1) generally. It would be needlessly restrictive, especially in the context in which the administrative proceedings are often carried out, to require that any submission of new evidence at the Appeals Council must perforce cause the case to be returned to the ALJ. Review of the total record by the Appeals Council under the standards described in n. 1 may most often protect the rights of both parties without imposing another procedural layer at the administrative level. But the delicate balance in this case, coupled with the comparative importance of the newly-proffered evidence and the other factors described in the text, require the decision that the Regulation may not dictate the ultimate result here. What the Appeals Council should have done in conformity with the Regulations (Section 404.967) was to *grant* the request for review and remand the case to the ALJ to consider *all* the evidence.

*Conclusion*

This Court finds that material evidence was, with reasonable justification, not presented to the ALJ. Consideration of that evidence by the Appeals Council alone is not sufficient under the circumstances. Accordingly the Secretary's decision is reversed and this action is remanded to the Secretary for a rehearing.[3]

---

**3.** After this opinion was written the Court's law clerk Jonah Orlofsky noted the recent opinion of Judge Green in *Ford v. Schweiker*, 523 F.Supp. 432 (D. D.C. 1981). Confronted with a virtually identical situation, Judge Green came to the identical conclusion and granted the identical relief as has this Court.