Claudia BAUMAN, Plaintiff,

v.

**MILA NATIONAL HEALTH PLAN, Defendant.**

Civil Action No. 07:03–2626–26.

United States District Court,
D. South Carolina,
Spartanburg Division.

Sept. 24, 2004.

Robert Edward Hoskins, Foster and Foster, Greenville, SC, for Plaintiff.

MEMORANDUM OPINION AND OR-
DER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDG-
MENT, DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDG-
MENT AND REVERSING DEFEN-
DANT'S DENIAL OF BENEFITS

FLOYD, District Judge.

## I. INTRODUCTION

This is an ERISA action. The case is before this Court for review of Defendant's decision to deny Plaintiff's claim for coverage of gastric bypass surgery.[1] Pending before the Court are Plaintiff and Defendant's cross motions for summary judgment.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Having carefully considered the motions, the responses, the reply and the applicable law, it is the judgment of this Court that Plaintiff's motion shall be granted and Defendant's motion shall be denied.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. The parties

Defendant is a self-funded, self-insured ERISA plan. CIGNA manages and administers Defendant's national medical program.

Plaintiff is a 52–year–old married female who resides in Spartanburg, South Carolina. She is a beneficiary of the plan by virtue of being the spouse of one who is covered by the plan. She has a body mass index of 45, which is considered obese.[2]

### B. The plan

The applicable provisions of the plan document are:

**Section 1.01. Allowable Expenses.** The term "Allowable Expense" shall mean an expense or charge that the Trustees, in their sole discretion, determine:

a. is necessary for the care and treatment of a non-occupational accidental bodily injury or sickness of a person who is a covered individual at the time the expense is incurred;

b. is recommended and approved by a Physician and is for a valid course of medical treatment, which is not experimental as determined by Medicare, and which is expected to lead to the cure and/or rehabilitation of the patient, provided that the Plan may obtain and rely upon independent medical advice to determine whether services or supplies are necessary for such medical treatment, are consistent with professionally recognized standards of care with regard to quality, frequency and duration and are provided in the most economical and medically appropriate site for treatment;

c. is a Covered Charge as described in the applicable section below;

d. is a Reasonable Charge; and,

e. is not otherwise excluded or limited by provisions of the applicable section.

Bates No. 000266.

**Section 1.03. Claims Manager.** The term "Claims Manager" shall mean the organization retained by the Trustees, to serve as utilization manager, to process medical claims and maintain claim histories for benefits other than mental

---

1. This is also known as bariatric surgery.

2. A body mass index of 20–25 is considered normal.

health and chemical dependency benefits on covered individuals.

*Id.*

**Section 1.21. Medically Necessary.** The term "Medically Necessary" care and treatment means care and treatment which are recommended or approved by a physician or dentist; are consistent with the patient's condition or accepted standards of good medical or dental practice; are medically proven to be effective treatment of the condition; are not performed mainly for the convenience of the patient or provider of medical or dental services; are not conducted for research purposes; and are the most appropriate level of service which can be safely provided to the patient. All of these criteria must be met; merely because a physician recommends or approves certain care does not mean that it is medically necessary. The Trustees have the discretionary authority to decide whether care or treatment is medically necessary.

Bates Nos. 000273–000274.

**Section 1.40. Utilization Manager.** The term "Utilization Manager" or "U.M." shall mean the organization or organizations retained by the Trustees to provide management of the medical care of covered individuals in such areas as hospital pre-admissions certification, concurrent review for medical necessity of hospital confinement, and other managed care procedures.

Bates Nos. 000279–000280.

**Section 3.01. Plan of Benefits.** Effective January 1, 2000, the following benefits shall be provided under the National Choice Plan:

Bates No. 000297.

**Section 3.01.01. In Network Benefits.** The amount payable for charges incurred through a network provider will be paid in full for the following. *All care is subject to any limitations im-*

*posed by the Plan's utilization manager. . . .*

*Id.* (emphasis added).

**Section 3.01.02. Out–of–Network/In Area Benefits.** The amount payable for charges incurred through a provider who is not a network provider will be paid at 70% of the Allowable Expenses, for the following except where noted. *All care is subject to any limitations imposed by the Plan's utilization manager. . . .*

Bates No. 000298 (emphasis added).

**Section 3.01.03. Out–of–Network/Out of Area Benefits.** The amount payable for charges incurred through any provider will be paid the indicated percentage of the Allowable Expenses for the following. *All care is subject to any limitations imposed by the Plan's utilization manager. . . .*

Bates No. 000299 (emphasis added).

**Section 3.07. Utilization Review Requirements.** The Plan's utilization managers must review certain treatment, whether delivered through a network provider or otherwise, before the plan will provide the maximum benefit available. The following requirements apply.

Bates No. 000311.

**Section 3.07.01. Pre-admission Certification (PAC) and Continued Stay Review (CSR).** These utilization review procedures must be followed by every Plan participant when he or she seeks care as described in this section, as follows:

a. Pre-admission Certification (PAC) and Continued Stay Review (CSR) refer to the process used to certify the medical necessity and length of any Hospital Confinement as a registered bed patient. PAC and CSR are performed through a utilization review

program by a Review Organization with which the Trustees have contracted....

*Id.*

**Section 3.07.02. Out Patient Certification Requirements.** ... Out-patient certification is performed through a utilization review program by a review organization with which the Trustees have contracted....

Bates No. 000312.

**Section 3.08. Excluded Charges.** Charges incurred for the following items are not covered under the Plan and are not Allowable Expenses, as follows:....

Bates No. 000315.

**Section 3.08.02. Not Medically Necessary.** Service or supplies not medically necessary for the medical care of the patient's illness or injury, except in the case of a tubal ligation or vasectomy. A tubal ligation or vasectomy will be covered as will preventive medical treatment provided by a network provider.

*Id.*

**Section 3.08.28. For Weight Loss.** For treatment of weight loss when an underlying severe medical condition is not present. Severe medical conditions include, but will not be limited to: diabetes, hypertension, cardiovascular disease; etc. In disputed cases, the Trustees reserve the right to make the final decision.

Bates No. 000319.

**Section 4.01. Plan of Benefits.** Effective January 1, 2000, the following benefits shall be provided for treatment of mental illness or chemical dependency. These covered benefits and the associated limitations and exclusions must be read separately [from] the benefits for treatment of other medical conditions.

Bates No. 000324.

**Section 4.06. Exclusions and Limitations.** Exclusions and limitations under this Section 4.06 include exclusions and limitations as set forth in Section 3.08 for the treatment of mental disorders or substance abuse. In addition, no benefits shall be payable with respect to expenses (any and all of which shall not be considered as Allowable Expenses) incurred for:....

u. For treatment of ... weight reduction, obesity,....;

Bates Nos. 000327–000329.

\*     \*     \*     \*     \*     \*

The applicable provisions of the Summary Plan Description (hereinafter referred to as "SPD") are:

Three companies that specialize in managing medical care administer the plan:

● **MEDICAL BENEFITS**

**CIGNA Health Care,** a leading health care provider, administers the medical benefits. CIGNA's administration of the benefits became effective January 1, 2000.

Bates No. 000225.

**OBLIGATIONS OF FIDUCIARIES**

The people who operate your employee benefit plans are called "fiduciaries." They are legally responsible to act solely in the interest of plan participants and to exercise prudence in performing their plan duties. The plan administrator and other plan fiduciaries interpret the terms of the plan and determine which plan benefits you are eligible for and entitled to. Any decision they make as a discretionary authority is upheld, un-

**460**

less that decision is shown to be arbitrary and capricious.....

Bates No. 000259.

A stop loss agreement between CIGNA and Defendant provides that CIGNA will reimburse Defendant when claims paid by Defendant for the current year exceed 120 percent of the claims of the previous year. CIGNA is required to pay only the excess amount. Since the inception of the agreement on January 1, 2000, CIGNA has never paid Defendant any monies under the agreement.

### C. The guidelines

The applicable provisions of CIGNA's guidelines: Bariatric surgery* for clinically severe (morbid) obesity is generally considered to be medically necessary for the following (either # 1 or # 2) (see below for information on specific procedures):

1. A Body Mass Index (BMI) greater than or equal to 40 for at least one year *with all of the following:*

▲ The patient is an appropriate age (18 to 60 years); **AND**

▲ History and documentation submitted as evidence of active participation and reasonable compliance with at least 2 professionally supervised weight loss programs for a minimum of 26 weeks in each program with one of the programs completed within the preceding 12 months. Programs should include weigh-ins on a regular schedule, at least monthly; **AND**

▲ Documentation from the medical record indicating that consistent reasonable efforts have been made by a physician to manage the patient's co-morbidities using standard medical protocols. Patients who are candidates for surgical procedures should be selected carefully after thorough evaluation by a multidisciplinary team with access to medical, surgical, psychiatric and nutritional expertise.

2. BMI between 35 and 39.9 for at least one year with the additional documentation of one or more clinically significant co-morbidities* which have failed to respond adequately to non-surgical treatment methods including appropriate and adequate medication, *with all of the following:*

▲ The patient is an appropriate age (18 to 60 years); **AND**

▲ History and documentation submitted as evidence of active participation and reasonable compliance with at least 2 professionally supervised weight loss programs for a minimum of 26 weeks in each program with one of the programs completed within the preceding 12 months. Programs should include weigh-ins on a regular schedule, at least monthly; **AND**

▲ Documentation from the medical record indicating that consistent reasonable efforts have been made by a physician to manage the patient's co-morbidities using standard medical protocols. Inadequate treatment of a comorbid condition should not be used as an indication for gastric bypass surgery in those patients with BMIs between 35 and 39.9. Patients who are candidates for surgical procedures should be selected carefully after thorough evaluation by a multidisciplinary team with access to medical, surgical, psychiatric and nutritional expertise.

* Cormorbid conditions included in this category are life threatening cardiopulmonary problems (e.g. severe sleep apnea, Pickwickian syndrome, obese related cardiomyopathy[ ], clinically unmanageable diabetes, hypertension, coronary artery disease, or

obesity related pulmonary hypertension)

**\* Bariatric surgery procedures**

There is *sufficient* evidence in the published peer-reviewed literature to support the use of the following bariatric procedures in the treatment of clinically severe/morbid obesity, when the patient has met the specific criteria noted above for obesity surgery:

- Open procedures

.　　.　　.　　.　　.

   ▲ Open Roux–en–Y gastric bypass;

.　　.　　.　　.　　.

**Absolute Contraindications**

- Severe or uncontrolled psychiatric disorders (schizophrenia, borderline personality disorder, uncontrolled depression)

**GENERAL BACKGROUND**

.　　.　　.　　.　　.

Other interventions in obesity management include: exercise/physical activity, behavior modification/theraphy, pharmacotherapy and, in select patients, bariatric surgery.

Bariatric surgery is not considered first line treatment. Weight loss surgery may be an option in a limited number of patients with clinically severe obesity.... Realistic expectations about the degree of weight loss, the compromises required by the patient, and the positive effect on associated weight-related co-morbidities and quality of life should be discussed and contrasted with the potential morbidity and operative mortality of bariatric surgery.

Bates Nos. 000378–000381 (emphasis in original).

*D.  Other documents*

The applicable provisions of the notice to participants dated December 12, 2002, which was sent to all participants to provide information concerning, *inter alia,* the claims and appeals procedures which became effective on January 1, 2003, are:

**NOTICE OF DECISION**

You will be provided with written notice of a denial of a claim (whether denied in whole or in part). This notice will state:

- The specific reason(s) for the determination[.]

.　　.　　.　　.　　.

- If an internal rule, guideline or protocol was relied upon in deciding your claim, you will receive either a copy of the rule or a statement that it is available upon request at no charge.

- If the determination was based on the absence of medical necessity, or because the treatment was experimental or investigational, or other similar exclusion, you will receive an explanation of the scientific or clinical basis for the determination applying the terms of the Plan to your claim, or a statement that it is available upon request at no charge.

*E.  Denials and appeals*

Pursuant to the terms of this plan, Plaintiff submitted a request to CIGNA for pre-certification of coverage for gastric bypass surgery. By letter dated February 20, 2003 (first letter), CIGNA denied Plaintiff's request.

[The] plan provides coverage for specified Covered Services which are medically necessary. After a review of the information submitted, we have determined that the requested services are not covered under the terms of your plan. This coverage decision was made based on the following:

Information indicates that member has underlying comorbid condition of hypertension. Member has undergone medical, nutrition & psychological evaluations & program is multidisciplinary. There

is no documentation that in the prior 12 months, she has been reasonably compliant with a supervised diet for 26 weeks.

Bates No. 000410–000411

By letter dated April 3, 2003, Plaintiff notified CIGNA that she was appealing CIGNA's determination. Subsequently, by letter dated April 28, 2003 (second letter), CIGNA informed Plaintiff that it was upholding its decision. The letter states that

[t]his decision was based on the following

Upheld—not medically necessary Rationale for decision: The information provided does not justify the medical necessity of Bariatric Surgery. The documentation does not show the patient[']s ability to comply with a post operative diet. Notes indicate a 51 year old with morbid obesity and a BMI of 45. Psychiatrist states patient is unable to tolerate any dieting at this time. The diet history does not show that the patient has participated in 2 professionally supervised weight loss programs, with reasonable compliance, of 26 weeks duration, one of these having occurred in the last 12 months.

Bates No. 000387

Through a series of letters submitted by Plaintiff's counsel, Plaintiff appealed CIGNA's April 28, 2003 denial of her appeal. By letter dated August 8, 2003 (third letter), CIGNA notified Plaintiff that is was upholding the decision to deny her request for surgery.

The committee reviewed all the submitted documentation. The clinical information provided does not support the medical necessity for the request of the gastric bypass procedure for [Plaintiff]. There is no documentation of professionally supervised weight loss program of 26 weeks in the previous 12 months, with regular weigh ins.

Please refer to the ... Plan Description under Excluded Medical Charges: What is not covered. The list below is an overview of some of the most common medical expenses, treatments, procedures and services not covered by the ... Plan.

Care not deemed medically necessary or not needed for an illness or injury.

Treatment for weight loss, unless required by underlying, severe medical condition.

Bates No. 000215–000216

### F. The lawsuit

Plaintiff filed this action on August 12, 2003, petitioning the Court to reverse CIGNA's denial of benefits. The parties subsequently filed cross motions for summary judgment.

## III. STANDARD OF REVIEW

### A. Summary judgment standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v.*

*Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. Hence, the granting of summary judgment involves a three-tier analysis. First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. FED. R. CIV. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. FED.R.CIV.P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. FED.R.CIV.P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex,*

477 U.S. at 327, 106 S.Ct. 2548. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. The substantive law of the case identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

### B. *ERISA review standards*

In reviewing denials of benefits by ERISA-governed plans, courts generally apply a *de novo* review. If, however, the documents governing the plan grant the plan or the claims administrator discretion to interpret or apply the plan's terms, as in the instant case, the Court will review the decision for an abuse of discretion. "[I]f the plan administrator's decision falls within the scope of the administrator's contractually conferred discretion, the court may review the merits of an administrator's decision only for an abuse of discretion." *Haley v. Paul Revere Life Ins.,* 77 F.3d 84, 89 (4th Cir.1996).

When reviewing a plan administrator's decision for abuse of discretion, the Court may consider only evidence before the plan administrator at the time of the decision. *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.,* 32 F.3d 120, 125 (4th Cir.1994). The administrator's decision must stand unless unreasonable, even if the Court would have reached a different conclusion. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Booth v. Wal–Mart Stores Inc. Assoc. Health and Welfare Plan,* 201 F.3d 335, 341 (4th Cir.2000). In other words, the Court may reverse a denial of benefits only if the decision is un-

supported by "substantial evidence" or "deliberate, principled reasoning." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion ... [and] consists of more than a mere scintilla ... but may be somewhat less than a preponderance." *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir.1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)). The Court's role is to determine only whether the decision was made rationally and in good faith—not whether it was right. *See, e.g., Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 825 (11th Cir.1984).

■ The Fourth Circuit has identified numerous factors that may be considered in the "abuse of discretion" analysis. One such factor is whether the plan administrator has a conflict of interest. *See Booth*, 201 F.3d at 342–43. In this regard, when a conflict of interest exists, arising out of the fact that the plan administrator is also the plan insurer, a court must "review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries." *Id. (citing Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 152 (4th Cir. 1996)). Thus, although the plan administrator's decision is still reviewed for an abuse of discretion in these circumstances, "this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir.1997).

## IV. DISCUSSION AND ANALYSIS

### A. Abuse of discretion

Plaintiff contends the stop loss agreement between Defendant and CIGNA creates a conflict of interest. Thus, according to Plaintiff, a modified abuse of discretion standard is appropriate in this case. However, since the Court finds that Plaintiff shall prevail in this action, even under the stricter abuse of discretion standard, it need not consider this question. Thus, for the purposes of considering these motions, the Court will apply the pure abuse of discretion standard.

### B. CIGNA's decision

Defendant argues that there is absolutely no proof that CIGNA abused its discretion in determining that Plaintiff is not entitled to coverage for the gastric bypass surgery. The Court disagrees.

#### 1. previous attempts at dieting

■ The record contains the recommendation of four board certified doctors who recommended that gastric bypass surgery is the appropriate treatment for Plaintiff. The physicians, as well as Plaintiff, have also brought forth evidence concerning her failed attempts at dieting, as well as her mental and physical inability to adhere to the dietary requirements. Defendant's only retort appears to be that, since Plaintiff failed to strictly adhere to CIGNA's rigid interpretation of its internal guidelines, coverage should be denied.

Stated differently, according to Defendant, in considering Plaintiff's claim, CIGNA determined that Plaintiff's request for gastric bypass surgery should be denied because it was not medically necessary. Defendant contends that CIGNA's decision was based on Plaintiff's failure to reasonably comply with the dieting requirements contained in CIGNA's internal guidelines. The Court, however, finds that Defendant's unyielding reliance on the guidelines is misplaced.

First, nothing in the plan document states that CIGNA's internal guidelines are binding upon Plaintiff or that the guidelines are a part of the plan. More-

over, the guidelines fall outside the four corners of the plan. As a result, Plaintiff was not on notice that her claim could be in jeopardy if she failed to strictly adhere to CIGNA's internal guidelines. Hence, Defendant's argument must fail.

Second, to the extent that Defendant's reliance on the guidelines is proper, however, the Court still finds there to be no substantial evidence to support CIGNA's decision. The dieting requirements in the guidelines call for "reasonable compliance." Contrary to Defendants contentions otherwise, when the Court reviews the uncontroverted evidence in the record regarding Plaintiff's failed attempts at dieting, it can reach no other conclusion but that CIGNA abused its discretion when it determined that Plaintiff did not reasonably comply with the guidelines.

For instance, after enumerating her many attempts at dieting, Plaintiff states, in relevant part, that

> My last diet attempt that was supervised by a doctor was in 1999–2000 when I again lost forty pounds but when I had to discontinue the diet medication I gained it all back and from that point on could not lose any weight at all.... I have tried all resources available. In my case, restricted diets kept putting more weight on me and with the end results the same, I was frankly concerned for my life realizing the damage yo yo dieting can do not to mention the diet medications I had taken.

Bates No. 000040–000043

As further evidence of Plaintiff's reasonable compliance, Dr. Susan Rinaldo, attests that Plaintiff

> ha[d] been on a medically supervised diet supplemented by diet medications.... [Plaintiff] has not been in sufficiently stable shape emotionally to

participate in such a [diet] program. To diet requires an investment of emotional and physical energy, which has not been available to her for some time, in large part because of the severity of her depression.... Given her repeated history of dieting and regaining even more weight, it does not seem responsible to recommend that she try this once again.

Bates No. 000407–000408.

Moreover, Dr. G. David Heatherly states that

> I believe[ ] that Claudia would be an ideal candidate for [gastric bypass surgery]. She has failed repeatedly in her attempts to lose weight but continues to gain to her current state of obesity.... It is my belief that this [gastric bypass surgery] would ... save her life physically.

Bates at 000056–000057.

Simply stated, the uncontradicted evidence before the Court is that gastric bypass surgery is not the first line of treatment that Plaintiff tried. The record is replete with evidence that she had attempted to lose weight by other methods for a long period of time. Defendant has failed to marshal any evidence to the contrary. The terms "strict adherence" and "reasonable compliance" are not synonymous.

### 2. physicians' recommendations

Defendant's argument that Plaintiff may not be able to diet after the surgery, thus, causing greater harm to her than does being morbidly obese is equally unsatisfactory. It is a doubtful course to argue against a claim such as this at this juncture on the basis that the medical procedure may be unsuccessful. The Court does not sit to make determinations as to whether a certain procedure may or may not be a sure cure for Plaintiff.[3] Instead,

---

**3.** Besides, Defendant has failed to present any evidence on which it could have reasonably

found that Plaintiff's surgery would not be a success.

the Court will stay unwaveringly focused on whether there is substantial evidence to support CIGNA's decision. Clearly, there is not.

Plaintiff has presented evidence through Dr. Dennis C. Smith that she suffers from the following co-morbid medical conditions: gastroesophageal reflux disease, hypertension, hypertriglyceridemia, hypercholesterolemia, infertility, irregular menses, stress urinary incontinence, chronic bronchitis, osteoarthritis, chronic shortness of breath, and depression. Bates No. 00059. Furthermore, Dr. Smith also states that Plaintiff "suffers from the chronic, life-threatening disease of *morbid obesity,* and is an excellent candidate for surgical intervention. I anticipate that this surgery, in the context of our comprehensive multi-disciplinary programs, will contribute to significant weight loss with resulting long-term improvement in her *obesity related comorbidities and health problems.*" Bates No. 000–000.

Moreover, Dr. J. Brian Fowler, Plaintiff's treating physician, wrote that

> Claudia is seen for continued evaluation and management of blood pressure. Running high at this point.... She has morbid obesity.... Her pressure is severely elevated.... At this point, her health is in a downward spiral secondary to the elevated weight. Because of the above she definitely needs to proceed with her surgical procedure for gastric bypass to aid with weight reduction.

Bates at 000073.

Defendant has presented nothing to contradict this evidence. Thus, except for its unreasonable reliance on the guidelines, there is nothing in the record to support CIGNA's decision.

### 3. Plaintiff's mental condition

Defendant also takes the position that the guidelines require that Plaintiff's request be denied based on her mental condition. The Court cannot yield to the force of this reasoning. First, as already observed, the Court fails to find that the guidelines are properly a part of the plan. Second, the evidence before the Court demonstrates Plaintiff's weight gain and her mental condition are so interrelated as to render CIGNA's strict interpretation of its guideline on this point unreasonable. Thus, to the extent the CIGNA relied on the existence of Plaintiff's mental condition to deny her benefits, the Court finds it abused its discretion.

### 4. other arguments

The Court has considered and rejected all other arguments made by Defendant in its denial of Plaintiff's claim.

### C. The Lockhart factors [4]

■ In deciding whether a fiduciary abused its discretion in denying ERISA benefits, this Court is bound give "due consideration" 1) to whether administrator's interpretation is consistent with the goals of the plan; 2) whether it might render some language in the plan meaningless or internally inconsistent; 3) whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself; 4) whether the provisions at issue have been applied consistently; 5) and, of course, whether the fiduciaries' interpretation is contrary to the clear language of the plan. *Lockhart v. UMWA 1974 Pension Trust,* 5 F.3d

---

**4.** Because of the striking similarity of *Buchanan v. Consolidated Coal Co. Ben. Plan for UMWA Represented Employees,* 166 F.3d 331, 1998 WL 879576 (4th Cir.1998) to the case at bar, the Court finds that opinion be especially helpful in its consideration of the instant matter. Accordingly, the Court has adopted the reasoning, and much of the language, of that opinion here.

74, 77 (4th Cir.1993). The Court will consider each of the factors in turn.

First, the Court finds the administrator's interpretation to be antithetical to the goals of the plan. Plaintiff suffers extreme emotional and physical conditions that, according to the evidence in the case, would likely be alleviated as a result of this surgery. The decision to deny the relief requested is patently offensive to the plan's goal to provide for health benefits.

Second, the denial of Plaintiff's claim renders the plain language of the plan meaningless. The plan provides that weight loss generally is excluded "when an underlying severe medical condition is not present." The plan goes on to state, however, that "[s]evere medical conditions include, but are not limited to: diabetes, hypertension, cardiovascular disease, etc." The record establishes that Plaintiff suffers from several severe medical conditions, including hypertension. Thus, to the extent that CIGNA relies on this language in its denial of Plaintiff's claim, such reliance renders the exception useless.

Third, the interpretation made by CIGNA is inconsistent with the requirements of ERISA. *See* 29 C.F.R. § 2560.503-1. In lieu of stating consistent reasons for the denial, each of CIGNA's letters presented Plaintiff with at least one additional reason for her denial—and apparently one more hurdle that she would have to overcome—before CIGNA would find gastric bypass surgery appropriate.

For instance, in letter one, CIGNA stated that "[t]here is no documentation that in the prior 12 months, [Plaintiff] has been reasonably compliant with a supervised diet for 26 weeks." In letter two, however, the bar was lifted. In that letter, CIGNA states that Plaintiff should have "participated in [not one, but] 2 professionally supervised weight loss programs, with reasonable compliance, of 26 weeks duration...." Finally, letter three adds yet another requirement. According to CIGNA, Plaintiff's weight loss program must include regular weigh-ins.

Even if the Court were to find that CIGNA complied with the procedural guidelines for ERISA, however, it would be not enough for this Court to be convinced that CIGNA did not abuse its discretion in denying Plaintiff the requested benefits. Moreover, although remand might be appropriate in most instances when the administrator has failed to follow ERISA's guidelines, the evidence is so overwhelming that CIGNA abused its discretion in this case that a remand would serve no purpose other than to cause needless delay.

Fourth, there is nothing in the record on which the Court can consider whether CIGNA has consistently applied the guidelines. Nevertheless, even if there was overwhelming evidence for the Court to find that this factor weighs in favor of Defendant, it would not be enough for this Court to find that the administrator did not abuse its discretion in denying Plaintiff's claim.

Fifth, CIGNA's interpretation is diametrically opposed to the plain meaning of the plan. Read as a whole, it is not reasonable that, based on the evidence that was before it, Plaintiff's claim should have been denied. The opinions of four board certified doctors, who all agreed that the surgery was needed, is virtually uncontradicted. Even when the guidelines are considered, a reasonable interpretation of them leads to the same conclusion. Certainly, these doctors are in a far better position to examine and diagnose Plaintiff's condition than those working on CIGNA's behalf.

This Court is fully cognizant of the deferential substantial evidence standard of review applicable to the Court when it reviews an ERISA denial of benefits claim.

Consistent with this deferential standard and considering the record as a whole, the Court must nevertheless ensure that the record contains some evidence beyond a mere scintilla that would allow reasonable minds to concur in the conclusion reached by the administrator. Mindful of this deferential standard, the record yields, at best, a mere scintilla of evidence to support CIGNA's finding that Plaintiff's claim should be denied. CIGNA's finding that Plaintiff's benefit request was not medically necessary is not reasonable. Accordingly, the Court must reverse.

## V. CONCLUSION

In light of the foregoing discussion and analysis, it is the judgment of this Court that Plaintiff's motion for summary judgment must be **GRANTED** and Defendant's motion for summary judgment must be **DENIED.** Therefore, the decision to deny Plaintiff's claim for coverage for gastric bypass surgery is hereby **REVERSED.**

**IT IS SO ORDERED.**